## UTAH HOTEL CO. v. MADSEN.

No. 2447.   Decided June 4, 1913.   On application for re-hearing July 30, 1913 (134 Pac. 577).

1. CORPORATIONS—SUBSCRIPTION CONTRACT—REQUISITES — LIABILITY OF SUBSCRIBERS. Comp. Laws 1907, secs. 314, 315, 316, and 332, providing for the organization of business corporations, does not require that the subscribers to a subscription for the capital stock shall sign the articles of incorporation or that the subscription contract shall be incorporated into the articles in order to be enforceable; it being perfectly competent for the subscribers to make a separate specific agreement to take and pay for a specified amount of the stock of the corporation to be issued when the corporation is organized, which will be valid and enforceable whether the subscribers sign the articles of incorporation or not. (Page 288.)

2. CORPORATIONS—SUBSCRIPTION CONTRACT—STATUTORY PROVISIONS. Comp. Laws 1907, sec. 316, providing that at least ten per cent. of the stock subscribed by each stockholder in the corporation must be paid in before the corporation is authorized to commence business, is a condition imposed for the protection of creditors of the corporation; and hence the fact that a subscriber had failed and refused to pay ten per cent. of his subscription did not entitle him to successfully contend that he was not a stockholder in defense of an action to recover his subscription. (Page 291.)

3. CORPORATIONS — SUBSCRIPTION AGREEMENT — VALIDITY — EFFECT. Whoever subscribes to an unconditional agreement to take a given number of shares of a corporation thereby becomes a shareholder in respect to that number, subject to any valid

conditions named in the subscription paper and to those imposed by the general law. The act of subscribing fixes the subscribers' liability to the corporation and creditors, though he has not paid into the treasury of the corporation any part of his subscription or done any act in his character as a stockholder. (Page 293.)

4. CORPORATIONS—STOCK SUBSCRIPTION CONTRACT—AMOUNT. Where a corporation to construct and operate a hotel was organized in strict conformity to law, it was no defense to a subscriber's agreement to take a stock in the corporation that the whole amount intended to be raised and specified in the subscription contract had not been subscribed; a corporation being authorized by Comp. Laws 1907, sec. 316, to begin business when ten per cent. of the subscription of each subscriber has been paid in. (Page 295.)

5. CORPORATIONS—STOCKHOLDERS—SUBSCRIPTION CONTRACT—ACTION —DEFENSE. In an action on a stock subscription contract, it was no defense that defendant refused to sign the articles of incorporation. (Page 295.)

6. CORPORATIONS—STOCK SUBSCRIPTION—"BONA FIDE SUBSCRIBERS." One signing a subscription binding him to take stock in a corporation to be organized is a "*bona fide* subscriber" within Const. art. 12, sec. 5, providing that corporations shall not issue stock except to *bona fide* subscribers. (Page 296.)

7. CORPORATIONS—ISSUANCE OF STOCK—BONA FIDE SUBSCRIBER. Const. art. 12, sec. 5, providing that no corporation shall issue stock except to *bona fide* subscribers, deals with fictitious issues of stock and has no application to the question whether a subscriber may be held to a compliance with his agreement to take stock in a corporation. (Page 296.)

ON APPLICATION FOR REHEARING.

8. CORPORATIONS—STOCK SUBSCRIPTION—ACTION—DEFENSES—TENDER. In an action on a stock subscription contract, it is not essential that plaintiff allege and prove a tender of the stock subscribed for. (Page 301.)

9. CORPORATIONS—STOCK SUBSCRIPTION CONTRACT—DELIVERY OF STOCK. Where, in an action on a stock subscription contract, plaintiff introduced the articles of incorporation from which it affirmatively appeared who were stockholders and how much each one had taken, together with the total amount of stock authorized to be issued, and this showed that all of the authorized stock had not been issued, it appeared *prima facie* that the corporation had in its possession the amount of stock necessary to fulfill defendant's subscription to be delivered to him on payment of his subscription. (Page 301.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by the Utah Hotel Company against P. W. Madsen.

Judgment for plaintiff. Defendant appeals.

AFFIRMED:

*James Ingebretsen* for appellant.

*King & Nibley* for respondent.

FRICK, J.

This action is based upon the following agreement, which appellant admitted was signed by himself:

"Salt Lake City, Utah, April 19, 1909. We, the undersigned, residents of the State of Utah, in consideration of one dollar to each by the other subscribers paid, do hereby subscribe in the proportion hereinafter set opposite our respective names, for the stock of a company to be organized, under the laws of the State of Utah, with a capital stock of fifteen hundred thousand ($1,500,000) dollars, divided into fifteen thousand (15,000) shares of the par value of one hundred ($100) dollars each. The principal place of business to be located in Salt Lake City, Utah. The name of the company to be the Utah Hotel Company. The general purpose of the company will be the erection and ownership of a first class hotel to be built on the northeast intersection of South Temple and Main streets, Salt Lake City, Utah, and such other places as may be provided in the articles of association, which are to be hereafter adopted. The payment on the above subscription shall be payable in sums not to exceed ten per cent of the amount by us subscribed in any one month."

Respondent, in substance, alleged, proved, and the court found that the appellant and a large number of others had signed the foregoing agreement, and that he had agreed to

take fifty shares of the capital stock of the corporation mentioned therein; that the corporation therein mentioned was duly organized in accordance with the terms and conditions and for the purpose mentioned in said agreement; that calls for the payment of the amounts subscribed for by the several subscribers were duly made in the proportions and within the time specified in said agreement; and that appellant was duly notified of each call as made and of the amount due thereon, but notwithstanding that fact that he had failed and refused to pay the amount he had agreed to pay or any part thereof, and that the whole amount of said subscription was due and payable. The articles or agreement of incorporation was produced in evidence, and it appears upon the face thereof that the laws of this state were duly complied with in organizing the corporation.

The appellant introduced no evidence, and the court made conclusions of law upon the findings aforesaid and entered judgment in favor of respondent for the full amount of the subscription, and he appeals.

While appellant has made quite a number of assignments, there is really but one question to be decided, namely: Is the subscription agreement we have set forth above legally enforceable against him? His counsel has filed two briefs in which he presents very elaborate arguments to convince us why his client should be relieved from the obligation he has assumed by signing the agreement we have set forth. The first reason given by counsel, as we understand him, is that under our statute (Comp. Laws 1907, sections 314, 315, 316, and 332), in order to enforce a subscription for capital stock of a corporation, the subscribers must sign the articles or agreement of incorporation, or, if a separate agreement is signed, that it must, at least in substance, be incorporated into the articles or agreement of incorporation as a substantive part thereof or the subscriber must in some way have estopped himself from making any defense.

Section 314, *supra,* so far as material, provides that any number of individuals not less than five, at least one of whom

must be a resident of this state, may become incorporators of a private corporation "for any purpose for which individuals may lawfully associate."

Section 315, in substance, provides that in order to organize a corporation "the incorporators shall enter into an agreement in writing, signed by each of them, and sworn to by at least three of their number, as hereinafter provided," in which agreement they must state the following matters: (1) The name of the corporation; (2) the place where organized; (3) the names of the incorporators and their places of residence; (4) the duration of the corporation, which cannot be more than 100 years; (5) the pursuit or business agreed upon stated in general terms; (6) the principal or general place of business; (7) "the amount of stock each party (incorporator) has subscribed;" (8) the par value of each share and the limit of capital stock agreed upon; (9) the number and kind of officers, the number of directors, their term of office, and who shall constitute the officers and directors until the first annual meeting is held, etc.; (10) how many of the board directors shall constitute a quorum for the transaction of the corporate business; (11) whether or not the private property of the stockholders shall be liable for the corporate obligations; and (12) any other additional matters that the incorporators may "deem necessary for conducting the business of the corporation and for its future safety and welfare."

Section 316 provides that to the foregoing statements "there shall be added the oath or affirmation of three or more of the incorporators, . . . to the effect that they have commenced, or it is *bona fide* their intention to commence and carry on, the business mentioned in the agreement, and that the affiants verily believe that each party to the agreement has paid or is able to and will pay the amount of the stock subscribed for by him: Provided, that said affidavit shall not be made until at least ten per cent. of the stock subscribed for by each stockholder and not less than ten per cent.

43 Utah—19

of the capital stock of the corporation has been paid in: . . . Provided, further, that where subscriptions to the capital stock of any corporation formed under the provisions of this chapter shall consist, in whole or in part, of property necessary to the pursuit agreed upon, there must appear in the articles of incorporation a description of the property so taken, with a statement of the fair cash value thereof, which statement . . . shall be supplemented by the affidavits of three persons, to the effect that they are acquainted with said property, and that it is reasonably worth the amount in cash for which it was accepted by the corporation."

Section 332 reads as follows:

"The stockholders of any corporation may regulate the mode of making subscriptions to its capital stock and of calling in the same by by-laws or by express contract."

What is there in any one or all of these sections that prevents any number of individuals from entering into an agreement whereby they agree among themselves that, in case a certain corporation is organized, each of them will become a stockholder therein and will take and pay for a specified amount of the capital stock to be issued when the corporation is organized? If such an agreement is sufficiently specific in its terms so as to make clear just what the parties agree to do and states the amount of stock that each subscriber agrees to take, why are not the signers to such an agreement bound in case a corporation is organized in accordance with the terms of the agreement and as provided by the latter? Certainly, in the absence of a statute prohibiting it, neither good morals nor sound public policy does so. Indeed, both public policy and good morals would require its enforcement. The statute is very clear that, in case it is proposed to organize a corporation with a large number of stockholders, it is only necessary that the names of five incorporators be inserted in the articles of incorporation, together with the amount of the capital stock that each of them agrees to take, and that those five and no more need to sign the articles. It is true that the incorporators must set forth the amount of the capital stock agreed upon and the number

of shares into which it is divided and the par value of each share; but the statute does not require, nor would it always be practical, to either state the names of all the prospective stockholders nor the exact amount of stock that each one will ultimately take. Besides, section 332 in express terms confers power upon the stockholders to "regulate the mode (manner) of making subscriptions to its capital stock and calling in the same by by-laws or by express contract." Since it may be done by express contract shows that it was intended that a contract to that effect may be entered into even before the corporation is organized, and the contract agreement is enforced if a corporation is in fact organized. It would hardly be necessary to enter into a contract after organization where the thing could be reached by regulation or by by-laws, but a contract would be necessary if it were attempted to be done before organization.

But counsel contend that section 316 provides that "at least ten per cent. of the stock subscribed by each stockholder" must be paid in before the corporation is authorized to commence business. From this counsel argues that, because appellant did not pay in ten per cent. of the amount subscribed by him, therefore he did not become a stockholder, and if he did not become a stockholder he is not bound. We think that there are two answers to this contention:

(1) If it were assumed that, where the whole subscription is to be represented by cash, each subscriber must pay ten per cent. of his subscription before the corporation is authorized to commence business, yet we have no such case here. In the case at bar more than the amount required by statute to be paid in before commencing business was in fact paid in by the conveyance of property to the corporation in the manner provided by the statute. There can be no doubt that under the statute one stockholder may deliver or convey to the corporation property, the value of which is equal to the entire par value of the whole capital stock agreed upon, while such stockholder perhaps may only subscribe for one-tenth or even much less of the whole capital stock. The

capital stock of the corporation is thus paid up in full, and all of the terms imposed in that regard by the state, which, in contemplation of law, is a party to the articles of incorporation, are satisfied. In such cases the individual stockholder, therefore, may pay his cash subscription to the corporation, but the sum is turned over to the one who conveyed the property and in payment therefor. In view, therefore, that in this case a large share of the capital stock was paid in property, we need not determine the question of whether, under different conditions, the individual stockholder should actually pay 10 per cent. of his subscription before commencing business or not.

(2) In our opinion it is clear that the condition imposed by the statute is not intended for the benefit of the subscriber but is for the protection of the creditors of the corporation. If this provision were construed to be for the benefit of the subscriber, he could defeat the organization of the corporation, although he had signed the articles of incorporation, and could thus take advantage of his own wrong. We think that a subscriber for corporate stock cannot avail himself of such a defense. These are matters that the state may enforce. Whether a subscriber may take advantage of the delinquencies of other subscribers, who are permitted to remain delinquent with the consent of the corporation, we need not now determine, since there is no such claim presented here. It is true that, if the statute specifically prescribes the manner of making subscriptions for capital stock, then, in order to bind the subscriber, the terms of the statute must ordinarily be complied with or the subscription will not be enforceable. This is precisely what counsel claims, and he further insists that such is the effect of our statute. We have set forth all of the provisions of the statute which are relied on by counsel, and, if his contention in that regard fails, he must necessarily fail in his defense. The duty and responsibility of interpreting the statute rests upon us. We cannot divide such responsibility or duty with any one. In our judgment counsel's contentions, for the rea-

sons stated, and for others which we need not elaborate, are clearly untenable.

It cannot successfully be contended that in organizing the corporation in question the terms of the agreement signed by appellant were departed from, or that its terms are not enforceable because of uncertainty. Neither can it be said that any statutory requirement has either been ignored or violated. It follows, therefore, that whether the agreement in question is enforceable or not must be determined from the general law upon the subject. While there is more or less diversity of opinion among the courts upon the subject, considerable of that diversity no doubt arises from the interpretation and application of local statutes. It is not necessary to review the numerous cases upon the subject here. It is sufficiently done by the text-writers. In 10 Cyc. 380, the general rule is stated thus:

"As a general rule, applicable to all American schemes of incorporation, although not always assented to by the courts, whoever subscribes to an unconditional agreement to take a given number of shares becomes thereby a shareholder in the corporation in respect to that number, subject to any valid conditions named in the subscription paper and to those imposed by the general law. The act of subscribing for a stated number of shares fixes the liability of the subscriber to creditors of the corporation as a shareholder, although he has not paid into the treasury of the corporation any part of his subscription, or done any act whatever in his character as a shareholder."

The rule is also clearly stated in 1 Thompson on Corporations, section 513, in the following words:

"The effect of agreements to form corporations, and the rights and liabilities of the subscribers to preliminary agreements, with the authorities supporting the same, are given by Mr. Lawson as follows: 'Where a number of persons mutually agree to become shareholders, and form a corporation to be afterwards incorporated, the obtaining of the charter makes them stockholders. A stock subscription made in contemplation of a charter to construct a railroad is a valid contract and can be enforced. A subscription to stock of a company for building a hotel, made before the creation of the company, was held to take effect as an agreement on its acceptance by the company when organized and to bind the sub-

scribers to take the shares and pay therefor as the board of
directors might require, even before the building of the hotel.
Each subscription to a common fund for a common purpose is a
contract by each associate with his fellows in consideration of
similar contracts by them who contribute to the common fund
the amount subscribed, and, when the full sum is subscribed and
the association organized, raises a duty and liability on the part
of each subscriber to pay the amount subscribed. . . .' "

In 1 Purdy's Beach Corp. section 205, the rule is stated
in the following words:

"A subscription by a number of persons to the stock of a cor-
poration to be thereafter formed by them has in law a double
character: First. It is a contract between the subscribers them-
selves to become stockholders without further act on their part,
immediately upon the formation of the corporation. As such a
contract it is binding and irrevocable from the date of the sub-
scription (at least in the absence of fraud or mistake), unless
canceled by consent of all the subscribers before acceptance by
the corporation. Second. It is also in the nature of a continuing
offer to the proposed corporation, which, upon acceptance by it
after its formation, becomes as to each subscriber a contract between
him and the corporation."

The rule is also stated and fully discussed in Cook on
Corporations (6th Ed.) sections 71, 72, and 75. In the lat-
ter section Professor Collins' rules relating to the subject
are given in full.

Counsel for appellant does not dispute the general rule
but insists that it has no application in this state because of
what is contained in our statute; but, inasmuch as counsel's
views with regard to the meaning of our statute cannot pre-
vail, his contentions cannot be sustained. We are clearly
of the opinion that there is nothing contained in our statute
which in any way affects or modifies the application of the
general rules which we have quoted above. While counsel
cites numerous cases, he with commendable frankness con-
cedes that with very few exceptions these cases sustain his
views only in case we agree with him in the construction he
places upon the statute in question. We have carefully
examined all of the cases cited by counsel, and we are clearly
of the opinion that none cited is controlling herein.

But counsel also contends that, inasmuch as there were less than $1,500,000 subscribed, therefore the amount subscribed for by his client is not enforceable. It is contended in this regard that it is implied from what is said in the agreement of subscription that the full amount of the authorized capital stock stated therein should have been subscribed before the agreement became effective. Under the statute, as we have seen, a corporation may be organized and may commence business as soon as a certain amount of the capital stock is subscribed for and paid in. There are no terms in the agreement sued on which in any way are contrary to the statute, and we must assume, therefore, that the parties entered into the agreement in pursuance of the general law upon the subject. We cannot impose conditions other than those stated in the agreement or such as are necessarily implied by law. The corporation was organized strictly in accordance with both the terms of the agreement and the statute. Counsel's contention must therefore fail.

_It is further insisted that there is neither evidence nor finding that the other parties to the agreement relied upon appellant's promise. If the fulfillment of the terms of the agreement does not show a reliance upon the mutual promise of all signers, we cannot conceive how a reliance can be shown.

It is contended that not all who signed the agreement sued on signed the articles of incorporation. The fact is that all who agreed to subscribe for stock did sign the articles of incorporation except the appellant, and he refused to do so. Under the circumstances, his refusal cannot aid him. Nor is the contention tenable that the appellant did not stand upon an equal footing with the other subscribers, since he took no part in choosing the first board of directors. If appellant failed to take part in the organization of the corporation, it was his own fault, of which he cannot now complain.

Lastly, it is contended that by virtue of article 12, section 5, of the Constitution of this state, the agreement in question is not enforceable because it is there provided that corporations shall "not issue stock except to *bona fide* subscribers thereof," and that appellant is not a subscriber, and therefore stock cannot legally be issued to him.

We have held that appellant is a *bona fide* subscriber, and therefore the whole contention falls. But that provision was not intended to have application to conditions like those involved here. That provision deals with a fictitious issue of stock and does not deal with the question of when a subscriber may be held to a compliance with his agreement to take stock. All that was agreed to by the parties to the agreement in question was that each one would contribute a certain amount of the capital stock of a certain corporation which was to be organized for a certain purpose at a specified place and for a specific amount of capital stock agreed upon. This agreement became effective and enforceable against each signer when its conditions were complied with. This was done when the corporation was organized, as provided in the agreement and in accordance with our statute. Immediately after its organization the corporation could call for the amount of the subscription as provided in the agreement, and, in case any subscriber refused to pay his proportion, the corporation could compel payment in a court of law. It could have sued for each installment as it became due, but the mere fact that it delayed action until after the whole subscription was called for and became payable does not affect its rights.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.

### ON APPLICATION FOR REHEARING.

FRICK, J.

Counsel for appellant has filed a petition for a rehearing in which he strenuously insists that we erred in our con-

clusions. Without presenting any new arguments in support of his contentions, counsel with some vigor insists that we have not sufficiently met those he originally presented, and that we have failed to give them full consideration. Moreover, he contends that we have "unfairly stated his position." This contention is based on our statement in the opinion that counsel had presented "elaborate arguments to convince us" that his "client should be relieved from the obligation he has assumed by signing the agreement we have set forth." What counsel specially excepts to in that part of the statement is that appellant had assumed an obligation by signing the agreement. No doubt, if one is inclined to limit himself to a mere legal technicality, it could be contended that until it is judicially determined that one is legally bound he has assumed no obligation. By reading all that is said on the subject in the opinion, however, it is manifest that we used the term "obligation" in a broad rather than in a narrow or technical sense. It certainly requires no argument to prove that when appellant had signed and delivered the agreement, as he concedes he did, he, *prima facie* at least, had assumed an obligation, and that the question presented to the court, was whether it was legally enforceable. It was in that sense, and in no other, that we made the statement, and we can see no good reason to change or modify it.

It is also contended that we placed a wrong construction on Comp. Laws 1907, section 332, which section we set forth in full in the opinion. It is, however, said by counsel that, although our construction be wrong, yet it does not necessarily affect the result. He insists that we have construed the term "stockholder" too broadly. If counsel will carefully examine the authorities with regard to the various meanings that are applied to the term, he will perhaps in time agree with us that we have not seriously transgressed in using the term in the sense we did. We have discovered no reason why we should modify the opinion in that regard, and it is adhered to.

It is further contended that, in order to have treated appellant and his counsel "fairly," we should have given some reason why we refused to "follow, distinguish, or explain" the case of *Sedalia, etc., Ry. Co. v. Wilkerson,* 83 Mo. 235. It is true that counsel had specially referred us to the decision of that case, and in his brief and oral argument insisted that the decision fully sustained his contention that appellant was not bound by the agreement we have set forth in full in the opinion, for the reason that by virtue of R. S. Mo. 1899, section 1034, a person does not become a stockholder of a corporation unless and until he signs the articles of incorporation, although he may have signed a preliminary agreement to take stock or to become a stockholder in it after organization. We did not specially refer to that case in the opinion. We had, however, carefully examined the same, together with all of the others that counsel had cited, and we so stated in the opinion. It did not occur to us that it was our duty to either "follow, distinguish, or explain" all the cases that counsel was pleased to cite from foreign jurisdictions. In view, however, that counsel seems to think that unless we do so he is not being fairly treated, we shall at least make the attempt to "explain" the Wilkerson Case. The opinion in that case is a commissioners' opinion and is based entirely upon the section of the Missouri statute, to which we have referred. The opinion is by two out of four commissioners constituting the commission. We read and considered that decision carefully, and after doing so we had no difficulty in arriving at the conclusion that the conclusion reached by the two commissioners was unsatisfactory for the reason that, instead of passing upon the question of whether a person could bind himself by subscribing for stock by entering into a preliminary agreement to take stock in a corporation to be organized, the commissioners broadly held that by signing such an agreement one did not become a stockholder under the Missouri statute, and in view that he did not he was not bound to take or to pay for stock subscribed for in such an agreement. The question we passed upon, however, was whether one could bind himself by a prelimi-

nary agreement that he would, upon the organization of a corporation, take and pay for a specified amount of stock in such organization when organized. We further held that there was nothing in our statutes nor in the common law prohibiting the making of such an agreement; and hence it was legally enforceable, and to that effect is the overwhelming weight of authority. While the Missouri statute is neither in terms nor effect quite like ours, yet we can see no reason why the commissioners arrived at the conclusion they did in the Wilkerson Case. The Missouri statute referred to governed the organization of railroad corporations only. The organization of corporations generally in that state is, as it is in this state, governed by a separate statute. Under the latter statute the Supreme Court of Missouri in the case of *Griswold v. Seligman*, 72 Mo. 110, decided prior to the Wilkerson Case had arrived at a contrary conclusion. Mr. Chief Justice Sherwood, who certainly was the equal as a lawyer of any judge who has graced the supreme bench of that state, in the headnote to *Griswold v. Seligman, supra,* states the law in the following words:

"One may render himself liable as a stockholder in a corporation as well by his conduct in respect to the stock of the corporation as by formal subscription and acceptance of stock."

The case just referred to was decided in 1880 by the Supreme Court of Missouri, while the Wilkerson Case was decided in 1884 by the commissioners as aforesaid. No mention of the Griswold Case is made in the Wilkerson Case and is therefore neither "followed, distinguished, nor explained," in the latter case. If, therefore, the Supreme Court of Missouri does not feel called on to follow, distinguish, or explain its own decisions, we can see no reason for doing so, especially where, as in this instance, the decision relied on is directly contrary to the overwhelming weight of authority.

In saying what we have in this regard, we are not unmindful of the fact that counsel claims that the Wilkerson Case is based upon a special statute and hence does not fall within

the general current of authority. We have, however, said (and we repeat it here) that there is nothing in the Missouri statute that prevents any one from entering into an agreement to subscribe for stock in a corporation to be organized in the future, and hence the law ought to be as it is declared to be by Mr. Chief Justice Sherwood in the foregoing quotation. If one may by conduct become bound as a stockholder without either signing the articles of incorporation or accepting the stock as declared by the eminent Chief Justice, why may he not be bound by a preliminary agreement into which he voluntarily enters? That he may do so is squarely held to be the law in California in the following cases: *Marysville, etc., Co. v. Johnson,* 93 Cal. 538, 29 Pac. 126, 27 Am. St. Rep. 215; s. c., 109 Cal. 192, 41 Pac. 1016, 50 Am. St. Rep. 34; *San Joaquin L. & W. Co. v. Beecher,* 101 Cal. 70, 35 Pac. 349.

While we could have cited the foregoing cases in the opinion, with many others, yet we did not deem it necessary to do so in view of the copious quotations we made from the text-books where the authorities in support of the text are collated.

It is next contended that we failed to determine the question of whether the corporation after it was organized had accepted the agreement entered into by appellant. We did not deem the question worthy of special consideration in view of the fact that it is generally held that the bringing of an action upon the agreement constitutes a sufficient acceptance. In this case, however, it is conceded that the corporation had sent out ten separate notices or calls to all the subscribers, including appellant, demanding payment of the installments of the stock subscribed for as the same became due under the terms of the contract signed by appellant. This, in and of itself, constituted an acceptance, and in view that it stood unquestioned we did not deem it necessary to enlarge upon it.

Again it is urged that we omitted to decide the question of whether a tender of the stock subscribed for by appellant was necessary before payment therefor could be enforced.

From what was said at the hearing, we assumed that the question was one merely of formality, on which appellant would not insist. In view that he insists upon it now, all that it is necessary to say is that the authorities **8** are to the effect that neither allegation nor proof that the stock was tendered is necessary in an action like the one at bar. *Columbia Elec. Co. v. Dixon,* 46 Minn. 463-466, 49 N. W. 244; *Marson v. Deither,* 49 Minn. 423, 52 N. W. 38; *New Albany, etc., Ry. Co. v. McCormick,* 10 Ind. 499, 71 Am. Dec. 338. But, entirely apart from all authority, how often must it be decided that where it appears, as in this case, that a tender would have been wholly useless no tender is necessary? While there are a few sporadic cases, perhaps, that in particular cases have departed from that general principle, yet the great weight of authority is to the effect that where the evidence without conflict shows, or where it is found, that a tender would have been useless, none is required to be either alleged or proved.

Finally it is contended that we did not pass upon the contention that respondent cannot recover because it did not prove that it had the amount of stock in its possession to deliver to appellant. We think now, and so thought when we wrote the opinion, that the record is conclusive that it had the stock. As we remarked in the opinion, the articles of incorporation were introduced in evidence, **9** and from them it affirmatively appears just who are stockholders and how much each one has taken in the corporation, together with the total amount of stock authorized to be issued, and *prima facie* at least it also appears that respondent had in its possession more than sufficient stock to supply appellant with the amount subscribed for by him. All of the foregoing propositions were necessarily decided against the appellant in the conclusion reached; and in view that in our opinion they had to be so decided, and inasmuch as the judgment was affirmed, we did not think that we were required to prolong the opinion by specially passing upon each proposition. Under ordinary circumstances we think counsel would have agreed with us. His zeal for the in-

terests of his client no doubt has induced him to demand more from the court than was really necessary. While zeal is a most commendable quality in an advocate, yet it may mislead and deceive him. Zeal may, and no doubt often does, affect the mind of the eager attorney, as the magnifying lens affects the eye of the zealous observer; it magnifies and at times distorts the subject to the former as it may the object to the latter, while to all others both the subject and the object retain their natural and ordinary proportions. It is but natural, therefore, that the zealous attorney must at times suffer keen disappointment in the results reached by an impartial tribunal. This case is but an illustration of the truth of the foregoing statement. Moreover, counsel has entirely overlooked the fact that in one sense at least the right of individuals to enter into and bind themselves by contract with respect to all matters not prohibited by express statute or by a sound public policy is involved. We are asked to deny such a right to many for the sake of relieving one from an obligation which he may think onerous. Thus is again exemplified Edmund Burke's great aphorism: "The people never give up their liberties but under some delusion." It would be nothing less than a delusion if we should surrender the right to contract upon the subject in question for the reasons urged by counsel. The duty of the courts is to foster and protect the right, and not to hamper it or fritter it away by indulging in legal technicalities.

No reason having been shown why the conclusion reached by us should not prevail, the petition for a rehearing should be, and it accordingly is, denied.

McCARTY, C. J., and STRAUP, J., concur.