BROOKS v. SCOVILLE et al.

No. 5167. Decided December 16, 1932. (17 P. [2d] 218.)

*I. E. Willey, E. C. Willey,* and *Richards & Mitchell,* all of Salt Lake City, for appellants.

*Fabian & Clendenin,* of Salt Lake City, for respondent.

STRAUP, J.

This action was brought by the plaintiff on an alleged breach of an oral contract between the plaintiff and the defendants whereby the defendants, as alleged, agreed to repurchase certain shares of the capital stock of the Tower Petroleum Company, a corporation, which the plaintiff had purchased from the defendants. In such respect it is alleged that the defendant Alva L. Scoville was an officer and director of the company and the defendants Frank L. and Walter B. Scoville stockholders thereof; that on or about June 10, 1927, at Salt Lake City the defendants jointly and severally sold and delivered to the plaintiff 1,333 shares of stock of the company for $5,000 which was paid for by the plaintiff, but he was unable to aver whether the stock was the property of the defendants or was treasury stock of the company; that at the sale, and to induce the plaintiff to purchase the stock and as a consideration therefor, the defendants jointly and severally agreed to repurchase the stock at the request of the plaintiff for the sum of $5,000 at any time within one year from the date of the purchase by the plaintiff.

It is further averred (paragraph 4 of the complaint):

"That on or about November 1, 1927 the plaintiff notified defendants that he demanded the repurchase of said stock by them, according to the terms of said agreement, as hereinabove set forth. That on numerous occasions since last named date, plaintiff has demanded of defendants that they so repurchase said stock, and defendants and each of them have repeatedly promised and agreed to do so forthwith, but have wholly failed to carry out the terms of said agreement or to

repurchase said stock, although plaintiff has at all times since December 1st, 1927 been and now is ready and willing to deliver said stock properly endorsed upon the carrying out of said agreement."

It is further alleged that the stock, since plaintiff's demand for the repurchase of it, has become valueless.

A general demurrer was interposed to the complaint, which was overruled. Thereupon the defendants answered, admitting that the plaintiff purchased common stock of the company for the sum of $5,000, but denied the stock belonged to them or either of them, and denied that there was any agreement whatever to repurchase the stock, and otherwise denied all of the material allegations of the complaint. The case was tried to the court without a jury. Findings of fact were made as alleged by the plaintiff, except as to paragraph 4 of the complaint the court in addition thereto also found "that on or before December 1, 1927, plaintiff notified defendants, and each of them, that he demanded the repurchase of said stock by them according to the terms of said agreement, and stated to said defendants that he was ready and willing to redeliver said stock to defendants upon compliance by them with the terms of said agreement." The court further found that the stock purchased by the plaintiff was the property of Scoville & Sons Company.

Judgment was rendered accordingly in favor of the plaintiff and against the defendants in the sum of $5,000, together with interest thereon from December 1, 1927. The defendants appealed. The appeal is based on assignments overruling the demurrer, insufficiency of the evidence to justify the findings, and rulings admitting in evidence portions of a deposition. On the demurrer it is urged that the complaint is wanting in substance because a tender or offer of tender of the stock by the plaintiff is not alleged; that the allegation that plaintiff at all times since December 1, 1927, "has been and now is ready and willing to deliver said stock properly endorsed upon the carrying out of" the agreement to repurchase the stock, does not suffice; that the

allegation that the plaintiff was and is "ready and willing" to deliver the stock does not constitute an offer or tender, and is a mere "statement or condition of mind"; and that the plaintiff was required to allege that he "actually made an offer or tender to comply with his part" of the alleged agreement.

By the plaintiff it is contended that the allegation in the complaint is, in effect, an allegation of refusal by the defendants to perform or a repudiation or denial of the alleged agreement, in which case an allegation of tender or offer of tender was not required. The plaintiff further contends that on the record an actual tender or offer to deliver the stock by him would have been vain and useless, inasmuch as the defendants denied the existence of any agreement to repurchase the stock and on such theory defended the action.

There seems to be a direct conflict in the adjudicated cases as to the necessity of alleging and proving a tender or offer of tender with respect to such a contract of mutual and concurrent covenants as here alleged. To support their contention, the defendants cite 1 Bancroft, Code Pleading, 142, § 67; 6 R. C. L. 948; *Porter* v. *Plymouth Gold Mining Co.*, 29 Mont. 347, 74 P. 938, 101 Am. St. Rep. 569; *Bailey* v. *Lay*, 18 Colo. 405, 33 P. 407; *Rogers* v. *Burr*, 105 Ga. 432, 31 S. E. 438, 70 Am. St. Rep. 50. The rule is stated by Bancroft that, in suing on an executory contract consisting of reciprocal promises to be concurrently performed, the plaintiff must allege either performance on his part or a tender of performance or show some excuse binding on the other party for not performing; that, where performance by plaintiff is a condition precedent to his right to demand performance of the defendant, such performance must be averred in the complaint, or, where the defendant has repudiated the contract, it must appear that this has disabled the plaintiff from performing, in which case the allegation of the fact without any allegation of performance is sufficient. In 6 R. C. L. the proposition is stated that the general rule appears to be that, where performance of an agreement

is to be concurrent on both sides, neither can recover without showing performance or offer to perform on his part or a tender of performance; however, where the defendant is to do the first act toward a mutual performance, it is sufficient for the plaintiff to show a mere readiness on his part and a statement or averment that one will not comply with the terms of his contract excuses the other party from going through the useless formality of making a tender. In *Bailey* v. *Lay,* supra, it is held that an averment that the purchaser is ready and willing to accept the property and make payment therefor according to the contract is not equivalent to an everment of payment or of an offer to pay, and, in the case of *Porter* v. *Plymouth Gold Mining Co.,* supra, it was held that an allegation that the plaintiff was "ready and willing" to return certain stock in accordance with a contract providing for its return and a repayment of the consideration given was not equivalent to an allegation of an "offer" to return the stock. But, as will be seen by reading the case, the ruling seems to be based upon statutory provisions referred to in the opinion.

Perhaps under the statute, Comp. Laws Utah 1917, § 6601, all that the plaintiff was required to allege was that he had duly performed all the conditions of the contract on his part to be performed; but no such allegation, or at least no such direct or specific allegation, was made by him. There is no direct allegation that the defendants repudiated the alleged contract or refused to perform it. What is alleged in such particular is that the defendants on demand to perform repeatedly promised and agreed to perform but "wholly failed" to do so. It may be said that an allegation of failure to perform is not synonymous with an allegation of refusal to perform nor of a repudiation or denial of an obligation to perform, though in a sense the effect of an allegation of a failure to perform an alleged agreement or obligation, when demanded to do so, may in some instances as to reciprocal covenants or promises to be concurrently performed be regarded equiva-

lent to an allegation of a refusal to perform, unless the performance on the part of the plaintiff was a condition precedent and requisite to his cause of action. There are no facts alleged which, on the face of the complaint, show that a tender or offer of tender would have been vain or useless, or was waived on the part of the defendants, except as might be inferred or implied from the allegation that the defendants repeatedly promised to forthwith perform their part of the obligation but failed to do so. The contention of the plaintiff that on the evidence it is shown an actual tender or offer of a tender would have been vain and useless does not avail the plaintiff in warding off the demurrer to the complaint, though it be assumed, as presently will be noted, that the evidence shows an actual tender or offer of tender would have been vain and useless. If the complaint is faulty because of mere imperfect or defective allegations of a material or essential fact, and no special demurrer having been interposed, as there was not, we could well look to the evidence and to the findings in considering whether such mere imperfect or defective allegations have or have not been cured or aided. But, if the complaint is wanting in substance of an essential allegation and because thereof the complaint does not state a cause of action, neither evidence nor findings will aid or cure such a defect, for, where the foundation of a cause of action fails, all goes to the ground. The question thus is whether, in view of the alleged character of the contract to state a good cause of action, it was essential to aver an actual tender or offer of tender.

In 13 C. J. 662, the general proposition is stated that, where acts to be performed by the parties to a contract are mutual and dependent, or where the existence of a right in one claiming it is dependent upon the performance of duties on his part, a tender of performance by him is necessary to enable him to sue to enforce the right, unless the circumstances are such as to excuse a tender, or in case the stipulations of the parties are to be performed concurrently, in

which case all that is required of either party is that he be able and willing to perform in case the opposite party is also ready to perform. On page 572 it is further stated that in a concurrent covenant mutual acts are to be performed at the same time, and, if one party is ready, and offers to perform his part, and the other neglects or refuses to perform his, he who is ready and offers has fulfilled his engagement, and may maintain an action for the default of the other, although it is not certain that either is obliged to do the first act. A leading case on the subject is that of *Smith* v. *Lewis*, 26 Conn. 110, where, in substance, it is held that, when concurrent acts in the nature of mutual conditions precedent are to be performed, the readiness and willingness to perform on the part of one party are sufficient to impose the duty of performance on the other party. The case is considered and approved in the case of *Amsden* v. *Atwood*, 68 Vt. 32, 35 A. 311, and where it is also stated that it is difficult to reconcile all the cases on the subject, but that the good sense to be extracted from all of them is that, if the one party covenants to do one thing in consideration of the other party's doing another, he must be ready to perform his part of the contract at the time he charges the other with nonperformance. In *Newman* v. *Horner*, 55 Ind. App. 298, 103 N. E. 820, by the syllabi which is in accordance with the opinion in considering a demurrer to the complaint, it is stated, that, where in a suit for breach of a written contract for the repurchase of a stock certificate the defendant who agreed to repurchase wrongfully refused to do so, it is not necessary for plaintiff to aver and prove a formal tender, it being sufficient to allege that he was at all times ready to transfer the certificate. In *Lyons* v. *Snider*, 136 Minn. 252, 161 N. W. 532, in an action to recover on contract whereby the defendant sold to the plaintiff corporate stock and agreed to repurchase it on certain conditions, it was held that the sale was a conditional sale with the option in the purchaser, and upon exercising the option the plaintiff was entitled to recover in an action at

law, though no formal tender was made before the action was brought. So, too, in the case of *Osgood* v. *Skinner*, 211 Ill. 229, 71 N. E. 869, where it is said that, if a contract calls for successive acts, the first by one party and then by the other, there is no breach by one if the precedent act has not been performed by the other. But, if the contract contemplates concurrent acts, it is sufficient to put one party in default that the other party is ready, willing, and offers to perform his part of the contract, and that an actual or formal tender in such case is not required. In *Prest* v. *Cole*, 183 Mass. 283, 67 N. E. 246, in considering the question of a tender, the court said that the most that can be said was that the delivery of the stock was to be concurrent with the payment of $4,500, and that the allegation of tender in the declaration was not necessary and surplusage, and that the court below did not err in refusing to rule as requested by the defendant that it was obligatory on the plaintiff to make a tender and prove it as alleged.

The case of *Utah Hotel Co.* v. *Madsen*, 43 Utah 285, 134 P. 577, 583, is somewhat in point. There the defendant subscribed for and agreed to purchase a certain number of shares of the capital stock of the Utah Hotel Company. An action was brought by the company to recover the agreed purchase price of the stock. Among other contentions, the defendant contended that he could not be put in default until a tender of the stock was made, which was not done, and that, before payment could be enforced, a tender was necessary. This court on rehearing held that the authorities were to the effect "that neither allegation nor proof that the stock was tendered is necessary in an action like the one at bar," citing cases, and that "the great weight of authority is to the effect that where the evidence without conflict shows, or where it is found, that a tender would have been useless, none is required to be either alleged or proved."

Looking alone at the complaint, as we must while considering the general demurrer, the matter is not entirely

free from doubt. Had the allegations of fact in the complaint with respect to the particular matter involved been as broad as the facts found by the court, that the plaintiff not only demanded a repurchase of the stock in accordance with the alleged agreement, and at all times was ready and willing to deliver the stock upon the defendants performing their part of the agreement, but that the plaintiff, when he made such demand, also stated to the defendants that he was ready and willing to deliver the stock to them upon their compliance with the contract, which might well be regarded as an offer of a tender, the case would present less difficulty. While the complaint is faulty, yet we think it is not so frail or so wanting in substance as not to state a cause of action. The frailty rather consists of imperfect or defective allegations of matters of fact with respect to the ultimate fact of performance or offer to perform on the part of the plaintiff, and not a total want of such facts. Such imperfections may be and were cured by the evidence, which shows not only a readiness and willingness on the part of the plaintiff to deliver the stock, but that he also, before the action was brought, offered to deliver the stock to the defendants upon their payment of the repurchase price, and it further being shown that a tender or offer of tender before the commencement of the action would have been vain and useless. In reaching such conclusion, we are rather inclined to follow the line of cases heretofore referred to that when, under such a contract as here alleged, concurring acts in the nature of mutual conditions precedent are to be performed, a demand made of performance and notice given of readiness and willingness to perform on the part of the party demanding performance are sufficient without a formal tender to impose the duty of performance on the other party. That, too, seems to be the view entertained in the case of *Utah Hotel Co.* v. *Madsen*, supra.

Now as to the question of sufficiency of the evidence to support the findings: The chief issue was as to whether

the defendants promised or agreed to repurchase the stock. The plaintiff affirmed, and the defendants denied, the agreement. The evidence with respect thereto is in direct conflict. To support such assignment, two propositions are urged by the defendants: (1) That the findings are not supported by, and are against, the fair preponderance of the evidence; and (2) that the evidence is insufficient to support the finding that any agreement or promise was made to repurchase the stock by the defendants. This being a law action, the first proposition may readily be disposed of with the observation that we many times have held that in such an action and on a conflict of evidence we are precluded from weighing the evidence or passing on the credibility of the witnesses or from determining whether the greater weight of the evidence preponderates in favor of the one party or the other. We are restricted to a consideration of whether there is sufficient competent evidence to support the findings or verdict.

What is particularly claimed by the defendants is that the testimony of the plaintiff and his witnesses with respect to the alleged agreement to repurchase the stock by the defendants is so indefinite and uncertain as not to justify a finding that such an agreement was made, and that the testimony of the defendants is direct and positive that no such agreement was had; and, though it be considered that some substantial evidence was adduced to show such an agreement, yet it is urged that without substantial dispute it is shown that the undertaking to repurchase the stock was an undertaking, not on behalf of the defendants or either of them, but of Scoville Sons Company, the found owner of the stock.

As to the particular question involved, the plaintiff testified that in June, 1927, he purchased from the defendants $5,000 worth of stock in the Tower Petroleum Company, and that they agreed to repurchase the stock at the same price paid by the plaintiff at any time within a year if he was not satisfied with the purchase; that Frank Scoville did

most of the talking; but all three defendants were present and acquiesced in all the statements made by Frank; that Frank asked the plaintiff if he wanted preferred or common stock, and that the plaintiff replied he would leave that entirely with the defendants, as "they were going to make good within a year," but that common stock was delivered to him; that a guaranty "by somebody else" than the three defendants was offered, that A. L. Scoville Company of Ogden would guaranty the stock if the plaintiff wanted the company to do so, to which the plaintiff replied that was not necessary, as the defendants' word was good. He further testified that at the time he purchased the stock the defendants made him sales manager of the company at a salary of $500 a month, and that he acted as such manager for about six months, that he made various demands on the defendants to repurchase the stock, and that in September, 1927, Frank and Alva Scoville at their office asked him how he wanted to settle, and that he told them, if they would give him the $5,000 back for the certificate purchased by him, he would take stock for his wages amounting to $3,000, and that they agreed to do that. He further testified that the stock for his wages was sent him by mail, but the defendants failed to pay him any money; that he complained to Frank and Alva about the matter, and they told him that it would not be long before they would pay him, and that Frank would take care of the matter; that in January, 1929, he stated to Alva that, if the defendants did not take care of the matter, he would start suit, and Alva told him to wait a couple of weeks and they would take care of it without any trouble; that, the defendants failing to pay plaintiff for the stock, he brought suit in December, 1929.

On cross-examination the plaintiff testified he simply bought $5,000 worth of stock, but did not know how much stock he was going to receive until he received the certificate for 1,333 shares, that he left that entirely to the defendants, inasmuch as he was to get his money back. He further testified that he "offered to return the stock to the de-

fendants"; that they asked him what he was going to do regarding his salary and stock, and he told them if they would give him his money back it would be satisfactory, and "offered them the stock in September, 1927," but made no physical tender of it. He further testified that he remembered the defendants saying that there was "another company" that would stand back of the stock; that he could not state exactly the name of the company, whether it was M. G. Scoville & Sons Company or Scoville & Sons Company; that Frank Scoville stated he would give his note, and that the Scoville Company would sign it or indorse it, if the plaintiff wanted them to do that, but plaintiff replied that Frank need not do that, as his "word was as good as his bond"; that, when he purchased the stock, defendants did not tell him the stock belonged to M. G. Scoville & Sons Company, and that he did not know whose stock he was buying; that Alva and Walter Scoville,at the time of the purchase of the stock, stated they would take care of whatever Frank said; that he told the defendants many times that he was dissatisfied with the purchase, but could not remember the exact dates. He further testified that, before he gave his check for the stock, the defendants explained their operations in oil fields in Wyoming, in Montana, and the operations of the Tower Petroleum Company in Salt Lake county for oil and gas. The check was dated June 14, 1927, payable to the order of Frank Scoville for $5,000, and was indorsed by Frank Scoville, payable to M. G. Scoville Sons & Co., and by the company indorsed to the order of the Commercial Security Bank and was paid.

A witness called by the plaintiff testified that in June or July, 1927, Frank Scoville, Alva Scoville, and the plaintiff came to the office of the witness and represented that they had organized a company for the drilling of certain wells particularly in Salt Lake county, and offered to sell to the witness $5,000 worth of stock in the company, and that, if he took the stock, they would take the stock back any time within one year and pay him the amount paid by him with

interest at 8 per cent, and that "they stated they had made the same kind of deal with Mr. Brooks," the plaintiff. Another witness testified that the three persons last mentioned, in the summer of 1927, offered to sell stock to the witness, and stated that they would repurchase it on or before a year if it was not satisfactory, and that such "was the deal they had made with Mr. Brooks," and was the same proposition they had made to others. Such witnesses testified that in submitting such propositions Frank Scoville did most of the talking, but that Brooks also took part in the conversations "representing what a splendid thing it would be to take the stock and did a good deal of boosting," but that the terms of purchase were made by Frank and Alva Scoville.

The three defendants testified in substance that 1,333 shares of the capital stock of the Tower Petroleum Company were sold and delivered to the plaintiff for the sum of $5,000, but denied that any agreement whatever was made whereby they or any of them had agreed to repurchase the stock; that Scoville's, Inc., was owned by the principal stockholders of the Tower Petroleum Company, and that as a business proposition Scoville's, Inc., would consider propositions for written guaranties for the purchase of stock in the Tower Petroleum, and that it had given some such guaranties in writing, but not otherwise. The defendants denied that they or that any of the Scoville companies at any time had agreed to repurchase the stock purchased by the plaintiff; that at a previous meeting the holdings and operations of the company were fully explained to the plaintiff, and at a second meeting, when the plaintiff purchased the stock, Frank Scoville "explained to Mr. Brooks at that time that if he bought $5,000 worth of stock in the Tower Petroleum Company we would make a three year written guaranty on the stock," but the plaintiff replied that he was not particular about the guaranty, and that he would take the stock "providing we gave him employment at $500 per month"; and thereupon plaintiff took $5,000 worth of stock, 1,333 shares at $3.75 a share, and a certificate therefor was

later issued and delivered to him; but no guaranty whatever was given the plaintiff and no promise or agreement made to repurchase the stock.

Other testimony was given by the defendants, but it is unnecessary to further refer to it. There is not anything in their testimony which supports the plaintiff's theory, except the testimony of Frank Scoville that the plaintiff some time after he had purchased the stock asked him to take it back and give him his $5,000; that he told the plaintiff he could not buy it because he did not then have the money to pay for it, and further testified he did not "figure" that he had any obligation to do so, and told the plaintiff to sell the stock himself; that the plaintiff at no time claimed that he (Frank) was under any obligation to repurchase the stock; but, if he had had the money, he would have purchased the stock, not because of any obligation to do so, but merely as a business proposition.

There is no evidence to show that M. G. Scoville & Sons Company or any of the Scoville companies agreed to repurchase the stock or to guarantee it. The evidence on behalf of both parties shows no such an agreement was made or guaranty given. The evidence on behalf of the plaintiff shows that the agreement to repurchase the stock was made only by the defendants, which by their testimony was denied; while some testimony was given to show that the defendants under certain conditions offered to give a written guaranty of one of the Scoville companies but such offer was not accepted and no such guaranty was given.

A deposition of a witness was taken on behalf of the plaintiff. Portions of the direct examination were favorable to the plaintiff and portions of the cross-examination favorable to the defendants. The disposition was not put in evidence by the plaintiff. Thereupon the defendants offered portions of the cross-examiantion. That was objected to by the plaintiff on the ground that, if the defendants offered a portion of the deposition, they were required to offer the whole thereof. In sustaining the objection, the court ob-

served that the defendants were not precluded from putting the deposition in evidence, but they could not "introduce it as a witness whose deposition was taken by the plaintiff and the cross-examination of which as being introduced as an adverse witness to the defendants." Upon further discussion, the objection was withdrawn, and a portion of the deposition not offered by the defendants was thereupon offered by the plaintiff "in the nature of cross-examination," whereupon the court observed "that being the case we might as well let the whole of the deposition be introduced and read"; to which counsel for the defendants stated they had no objection, but did not concur in the view that, if the deposition was introduced, "it be introduced as our witness." Thereupon the whole of the deposition was read in evidence.

Because of the rulings and observations of the court, it is claimed that the court considered the deposition as testimony "of a witness called by the defendants" instead of considering it as testimony of a witness of the plaintiff. We think the matter of little moment. Our statute, Comp. Laws Utah 1917, § 7182, provides that, when a deposition has been once taken, it may be read by either party in any stage of the same action or proceeding, etc., and "is then deemed the evidence of the party reading it." That, too, is the general rule. 4 Encyc. of Ev. 494. Had the whole deposition been offered by the defendants, under the statute, it would have been regarded as evidence of the defendants. The general rule also is that, unless there is a statute to the contrary, either party may introduce all or any competent and relevant parts of a deposition which are not fragmentary or misleading, and the opposing party may put in evidence any other relevant part or parts. 18 C. J. 735; 4 Jones Comm. on Ev. (2d Ed.) 3767, § 2032; 2 Elliott on Ev. 1178, 1179. Where one party offers only a part of a deposition, and the opposing party offers other parts which merely modify or explain what is offered by the first party, it may be said what was so offered by both parties made the deponent a witness of the first party. If

the part or parts offered by the opposing party in no particular modifies or explains what is offered by the first party, it may be said that, as to the parts offered by each, the deponent was the witness of each. Of course, the deposition, whether offered as a whole or only in part by either party, would not be conclusive against the party so offering it or prevent contrary evidence being given by either party. In such respect a deposition does not differ from oral testimony of a witness. Further, the whole deposition having been admitted, we think it not of much importance whether the court in considering it regarded the testimony as coming from a witness of the one party or the other.

From a consideration of all of the evidence adduced, including the deposition, we are of the opinion that there was sufficient evidence to support the findings complained of that an agreement to repurchase the stock as alleged was made; that the plaintiff before suit was brought offered to redeliver the stock upon payment thereof by the defendants; and that on the evidence a physical or actual tender of the stock would have been vain and useless.

The judgment is therefore affirmed, with costs to the respondent.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., coucur.