2008 UT App 263

Allison Q. **KUNZLER**, Petitioner, Appellee, and Cross-appellant,

v.

Alan **KUNZLER**, Respondent, Appellant, and Cross-appellee.

No. 20061146–CA.

Court of Appeals of Utah.

July 10, 2008.

David S. Dolowitz, Dena C. Sarandos, Bradley M. Strassberg, and Thomas J. Burns, Salt Lake City, for Appellant and Cross-appellee.

Kim M. Luhn, Salt Lake City; and Jennifer D. Reyes, Brigham City, for Appellee and Cross-appellant.

Before GREENWOOD, P.J., BILLINGS and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 The trial court awarded Allison Q. Kunzler (Wife), among other things, one half of Alan Kunzler's (Husband) undivided interests in five parcels of real property (the Properties). The Properties had been given to Husband and his siblings by his mother, Bernice L. Kunzler nka Bernice Rous (Rous), during the marriage of Husband and Wife. The trial court supported its award of the Properties by ruling that Husband's interests in these parcels were not really a gift from Rous but, rather, represented earnings due to Husband's work on Kunzler Ranch, LLC (the Ranch). This ruling was based solely upon Rous's deposition testimony. Husband appeals this award of the Properties to Wife, arguing that the trial court erred in ruling that the Properties are marital property.

¶ 2 The trial court also ruled that because Rous transferred her and her late husband's real estate into the Ranch for estate planning purposes, Husband's interest in the Ranch and the bulls that lived on the Ranch's land were his separate property. Wife cross-appeals, arguing that trial court erred by ruling Husband's interest in the Ranch to be nonmarital property as well as by excluding the bulls that lived on the Ranch from the marital estate. We affirm in part, and reverse and remand in part.[1]

## BACKGROUND

¶ 3 On April 4, 1981, the parties married. Throughout the marriage, Husband worked on the family ranch and Wife was a homemaker. In 1987, Rous began purchasing properties and titling them in her children's names. The Ranch was established after Husband's father's death to reduce Rous's estate tax burden. Virtually all of the acreage placed under the control of the Ranch was originally owned by Husband's parents. Husband has a 20.37% ownership interest in the Ranch.

¶ 4 Wife filed a petition for divorce on April 24, 2003, after twenty-two years of marriage. The trial court issued a bifurcated decree of divorce on October 27, 2004, which divorced the couple, awarded Wife sole physical and legal custody of the minor children, ordered Husband to continue to pay $549 a month in temporary child support, and reserved the remaining issues for trial. Trial was held on August 17 and 18, 2005.

¶ 5 In her opening statement on the first day of trial, Wife's counsel requested

> that with regard to any real property that [Husband] owns, individually or jointly, that [Wife] be awarded half interest in said property. With regard to the [Ranch] ownership interest, [Wife is] requesting an award of half of the 20.37 percent interest that he now holds. And then with regard to other personal property we would ask that [Wife] be awarded an equitable interest in that as well.

¶ 6 Later that day, Wife's counsel asked Husband, "Isn't it true that . . . your mother purchased this land . . . for the purpose of benefitting you and your brothers because you were working the [R]anch?" While Husband never directly answered the question, he responded by saying, "[Rous] is who owned the [R]anch. It went through her account. It was her. She paid the wage[s]. . . . Me and my brothers and some hired men did the work, but it was not [R]anch money [that paid for the Properties]." Wife's counsel never pressed Husband on why Rous gave him interests in the Properties.

¶ 7 On the second day of trial, Wife's counsel addressed Rous's dispersal of her land, pointing to a statement Rous made in a deposition. Before Wife's counsel could utter the statement, Husband's counsel objected, stating that he had been "informed that [the depositions] would not be transcribed," that "they've never been presented to [Rous]

---

1. Judges Billings, Davis, and Greenwood agree that the trial court's award of the Properties as marital property must be reversed, and that the trial court's award of personal property must be affirmed. Judges Billings and Greenwood further hold that the trial court should revisit the distribution of the Properties under a different theory, *see infra* ¶¶ 32–37; and Judge Davis dissents.

for signing," and that the deposition in question was "not before this court at this stage anyway." The trial court asked for cases on the issue of property division from both parties but declined to address the validity of the deposition, stating that the parties' motion regarding property division "sort of moots the question of whether I'm going to receive that deposition right now or not."

¶ 8 On cross-examination, Wife's counsel sought to ask Rous questions based on her previous statements in deposition. Husband's counsel then reiterated his previous objections. The trial court ruled, "I'm not going to accept the deposition at this point as evidence, but I will allow [Wife's counsel] to show it to [Rous] and have her read it and then [Wife's counsel] can ask her about it." Wife's counsel then asked Rous to read aloud both the question and her answer from the deposition, at which point Husband's counsel again objected. The trial court ruled that Wife's counsel could ask Rous to read the deposition and ask Rous if it refreshed her memory. Wife's counsel then read Rous's deposition testimony where she stated that her children who work on the Ranch would receive more real property than those children who do not. Rous testified that this reading of the deposition transcript refreshed her memory, but Wife's counsel moved on to another line of questioning without any further questions about the subject. After both parties rested, the trial court took the matter under advisement, promising to issue a written decision shortly.

¶ 9 The trial court issued a Memorandum Decision on August 24, 2005, addressing the issues of child support, alimony, personal and real property, and attorney fees, as well as directing Wife to prepare findings. Respecting the Properties, the trial court relied on Rous's deposition statements to rule that the Properties represented earnings for Husband's work on the Ranch and were therefore marital properties. Thereafter, the parties disputed various income calculations, technical errors, as well as the fact that the Properties had been deemed earnings by the trial court.

¶ 10 The trial court issued a second Memorandum Decision on March 15, 2006, recalculating Husband's income for the purposes of child support and alimony. Again, the trial court directed Wife to prepare findings. Wife's trial counsel submitted Supplemental Findings of Fact and Conclusions of Law on March 24, 2006. This document again referenced Rous's deposition testimony as the basis for the finding that the Properties represented earnings and not gifts. The trial court signed this document, along with a Supplemental Decree of Divorce, on April 6, 2006.

¶ 11 On November 22, 2006, the trial court issued its Amended Supplemental Findings of Fact and Conclusions of Law, as well as an Amended Supplemental Decree of Divorce. The trial court made findings on child support, alimony, health insurance, child care, tax exemptions, attorney fees, and personal and real property. Specifically, the trial court awarded Wife half of the cattle and horses owned by the parties but determined that the bulls belonged to the Ranch and not to Husband. Next, the trial court again determined that the undivided interests in the Properties were given to Husband by Rous not as a gift or inheritance but as earnings for his work on the Ranch, and accordingly awarded Wife a one half interest in Husband's undivided interests. To support this determination, the trial court relied upon Rous's deposition testimony. The trial court ruled that the land and livestock held by the Ranch was not marital property and that Husband's ownership interest in the Ranch was part of Rous's estate plan to keep the property in the family and reduce taxes.

¶ 12 Husband appeals the trial court's awarding of half of his interests in the Properties to Wife. Wife cross-appeals, challenging the trial court's determination that Husband's interests in the Ranch and the bulls are not marital property.

ISSUES AND STANDARDS OF REVIEW

¶ 13 Husband challenges the award of half of his share of the Properties to Wife. Wife challenges the conclusion that the Ranch and the bulls were not marital property. "In a divorce proceeding, there is no fixed formula from which to determine the division of prop-

erty. Thus, 'we afford the trial court considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity.' " *Baker v. Baker,* 866 P.2d 540, 542 (Utah Ct.App.1993) (quoting *Watson v. Watson,* 837 P.2d 1, 5 (Utah Ct.App.1992), *overruled in part on other grounds by Lyon v. Burton,* 2000 UT 19, ¶ 76 n. 18, 5 P.3d 616). Therefore, "[w]e will alter the trial court's property division 'only if there was a misunderstanding or misapplication of the law resulting in a substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.' " *Id.* at 543 (quoting *Watson,* 837 P.2d at 5); *see also id.* at 542 ("The trial court's findings of fact are presumed to be correct, and because we lack the advantage of seeing and hearing witnesses testify, we do not make our own findings of fact.").

¶ 14 A trial court's findings, however, must be supported by facts that would be admissible at trial. *See Centro de la Familia de Utah v. Carter,* 2004 UT 43, ¶ 6, 94 P.3d 261. "[O]n appeal from a judgment of the trial court, our role is not to substitute our own findings for those of the trial court, but to examine the record for evidence supporting the judgment." *Shioji v. Shioji,* 712 P.2d 197, 201 (Utah 1985).[2]

## ANALYSIS

¶ 15 In a divorce proceeding, a property distribution "must be based upon adequate factual findings and must be in accordance with the standards set by this state's appellate courts." *Dunn v. Dunn,* 802 P.2d 1314, 1317 (Utah Ct.App.1990). "Generally, in a divorce proceeding each party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property." *Bradford v. Bradford,* 1999 UT App 373, ¶ 26, 993 P.2d 887 (alteration, cita-

tion, and internal quotation marks omitted). We analyze the trial court's findings on the division of both personal and real property based on these principles.

### I. The Properties

¶ 16 Husband argues that the trial court erred in ruling that the Properties are marital property. Specifically, Husband contends that the trial court improperly relied on deposition testimony that was never properly part of the trial record. Generally, "either party may introduce all or any competent and relevant parts of a deposition which are not fragmentary or misleading, and the opposing party may put in evidence any other relevant part or parts," *Brooks v. Scoville,* 81 Utah 163, 17 P.2d 218, 224 (1932), for the purposes of impeaching an adverse witness, *cf.* Utah R. Evid. 806; Utah R. Civ. P. 32(a).

¶ 17 In *Thompson v. Ford Motor Co.,* 14 Utah 2d 334, 384 P.2d 109 (1963), it was "apparent that [the depositions cited by the parties] were never marked and introduced into evidence nor read by the trial judge." *Id.* at 109. Therefore, "the testimony contained in the deposition was not presented to" the trial court. *Id.* Appellate courts have long held that "we cannot consider matters not in the record before the trial court," including depositions that were never properly entered into evidence. *Reliable Furniture Co. v. Fidelity & Guar. Ins. Underwriters, Inc.,* 14 Utah 2d 169, 380 P.2d 135, 135 (1963). It is equally axiomatic that a trial court cannot use statements made in a deposition that were never properly admitted into evidence at trial as support for a factual finding.

¶ 18 Here, the trial court made its ruling and based its award to Wife of one half of Husband's undivided interests in the Properties solely on the basis of deposition testimony that was never admitted into evidence at trial.[3] Reading from a deposition to refresh

---

**2.** Wife also argues that the trial court erred in awarding her an interest in Husband's undivided interests in the Properties "without also determining a procedure by which she receives the value [of her interest in the Properties]." We decline to address this issue because Wife did not raise the issue below and because Wife provides no authority for the proposition that the trial

court has an affirmative duty to provide for the liquidation of marital property.

**3.** Had the evidence been properly before the court, the trial court's determination that the Properties represented Husband's earnings during the marriage would have been properly sup-

a witness's recollection does not suffice. *See State v. Oliver*, 820 P.2d 474, 479 (Utah Ct.App.1991) (holding that testimony is admissible only if the witness has "present personal knowledge" that is "independent knowledge or memory" of the matter that was refreshed via writing). The record reflects only that Rous remembered *making* a statement, not that the statement was, in fact, true. *Cf. Green v. Louder*, 2001 UT 62, ¶ 33, 29 P.3d 638 (distinguishing between veracity and accuracy in the use of deposition testimony). "This left the matter just where it would have been if the question had not been in the deposition, and had not been answered by the witness." *See Burnham v. Stoutt*, 35 Utah 250, 99 P. 1070, 1072 (1909). The deposition was never offered as evidence,[4] nor was Rous asked if her testimony in court would be the same as her deposition testimony.

¶ 19 Wife contends that even if the deposition testimony could not have been used to support the court's findings, the Amended Supplemental Findings of Fact and Conclusions of Law includes language giving the district court alternate grounds for the distribution of the Properties: That the Properties were marital property because they were either "acquired or enhanced through the joint efforts of both [Husband] and [Wife], or . . . have been commingled." To support the district court's statement, Wife points both to an affidavit wherein she listed her labors assisting Husband and to the benefits that the Ranch provided Husband. While Wife's counsel referenced this affidavit in passing during the second day of trial, the affidavit

was never admitted as evidence. Moreover, at trial Wife testified only as to how her domestic labors enabled Husband to ranch for longer periods of time without having to, for example, return home to launder his clothes. This testimony does not support either the commingling or the enhancement of real property. Thus, the evidence in the trial record, of which the affidavit was never a part, is insufficient to support a factual finding of either commingling or enhancement of the Properties.[5]

¶ 20 Finally, the trial court's ruling was not based upon whether the property award was to achieve a fair, just, and equitable result. In fact, Wife never presented, either at trial or on appeal, an equity-based argument to suggest that awarding an interest in the Properties would be appropriate. Thus, we reverse the trial court's award to Wife of a one half interest in Husband's undivided interests in the Properties.

¶ 21 The dissenting opinion claims that Wife's counsel's opening statement "clearly stated Wife's position that she was seeking an equitable interest in Husband's individually-owned property." *Infra* ¶ 33. However, Wife's counsel merely requested "that [Wife] be awarded half interest in [the Properties]"—a request consistent with Wife's trial strategy and the trial court's ruling. The portion that the dissenting opinion quotes that references Wife's purported request for equitable distribution was only "with regard to other *personal* property" and not real property. (Emphasis added.)

ported and would not have been an abuse of discretion.

4. Rule 32(d) of the Utah Rules of Civil Procedure "makes 'publication' [of depositions] unnecessary." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 45 n. 6 (Utah Ct.App. 1988).

5. Wife also cites to *Dunn v. Dunn*, 802 P.2d 1314 (Utah Ct.App.1990), and *Elman v. Elman*, 2002 UT App 83, 45 P.3d 176, to argue that "[w]hile she was not his partner in the business of the [Ranch], she was his partner in the business of marriage." *See Elman*, 2002 UT App 83, ¶ 23, 45 P.3d 176. However, in *Dunn*, the wife "performed bookkeeping and secretarial services without pay" for the husband's medical practice, and therefore the business "was founded and

operated through the joint efforts and joint sacrifices of the parties." 802 P.2d at 1318. Similarly, in *Elman*, the wife "not only managed the household, but also grew the parties' marital properties. She secured the land for and was in charge of building the parties' Park City home." *Elman*, 2002 UT App 83, ¶ 24, 45 P.3d 176. The *Elman* court awarded the wife half of the increase in value of the properties during the marriage *"given the unusual responsibilities she assumed."* *Id.* (emphasis added). In contrast, here Wife's role was limited to maintaining the household to enable Husband to work for longer stretches of time away from home. Even if her affidavit had been properly admitted into evidence, Wife's claims of assistance therein would not rise to the level present in *Elman* and *Dunn*.

[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.... For a trial court to be afforded an opportunity to correct [an alleged] error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority. Issues that are not raised at trial are usually deemed waived.

*438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (first, second, fourth, and fifth alterations in original) (citation and internal quotation marks omitted); *see also Turtle Mgmt. v. Haggis Mgmt.*, 645 P.2d 667, 672 (Utah 1982) ("This Court will not consider on appeal issues which were not submitted to the trial court and concerning which the trial court did not have the opportunity to make any findings of fact or law."). It is clear that Wife made no allusion to an equitable theory respecting the Properties, let alone presented the issue to the trial court in such a way that the court could correct the alleged error. Thus, the dissenting opinion is ruling sua sponte that an equitable theory is appropriate.

¶ 22 "With respect to the court of appeals' power to make equitable decisions in domestic relations matters, the court of appeals is not entitled to substitute its judgment for that of the trial court except in the extraordinary circumstance of a manifest injustice." *Reese v. Reese*, 1999 UT 75, ¶ 10, 984 P.2d 987 (internal quotation marks omitted). "[I]n most circumstances the term manifest injustice is synonymous with the plain error standard...." *State v. Casey*, 2003 UT 55,

¶ 40, 82 P.3d 1106 (internal quotation marks omitted). Neither party alleges plain error on the part of the trial court.

¶ 23 My colleagues argue that because the trial court erroneously determined that the Properties were marital property, "Wife did not further pursue the correct legal approach of equitable distribution." *Infra* ¶ 33. This argument ignores the fact that the trial court made its ruling that the Properties were Husband's earnings for working for the Ranch (and hence the Properties were marital property) several days *after* the completion of two days of trial. Secondly, the approach of Wife and of the trial court was essentially correct—Wife simply failed to property introduce the deposition testimony into evidence. Finally, the opinion fails to cite any authority for the implicit proposition that since Wife was successful at trial on one legal theory, she did not waive the equitable distribution theory by failing to raise it.

¶ 24 Having given Wife a new trial on a new theory, for some reason, my colleagues conclude that this court may affirm the trial court's awarding of a one half interest in Husband's undivided interests in the Properties on any ground, making a passing reference to *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225, to support this proposition. *See infra* ¶ 33. However, in order for an appellate court to affirm on an alternate ground, "not only must the alternative ground be apparent on the record, it must also be sustainable by the factual findings of the trial court." *State v. Topanotes*, 2003 UT 30, ¶ 9, 76 P.3d 1159. The dissenting opinion has failed to establish either of these required elements.[6]

---

**6.** The supreme court has repeatedly held that it is not our place as an appellate court to substitute our judgment for what the appropriate course of action should have been at trial or on appeal—by the trial judge, attorneys, or litigants—but rather to evaluate the parties' and the judges' decisions as they were. This principle has been expressed many ways, whether it be under the rubric of preservation, *see Chen v. Stewart*, 2004 UT 82, ¶ 48, 100 P.3d 1177 ("[T]he objection should be made to the judge at the earliest possible opportunity .... otherwise, a party disappointed with [the outcome] would be able to obtain a second bite at the apple by withholding his objection ...." (citations and internal quotation marks omitted)); res judicata, *see Macris & Assocs. v.* *Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214 ("[Res judicata] precludes the relitigation of all issues [and claims] that could have been litigated ... in the prior action."); ineffective assistance of counsel, *see Lafferty v. State*, 2007 UT 73, ¶ 24, 175 P.3d 530 ("'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, ... and to evaluate the conduct from counsel's perspective at the time.'" (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Mar. 31, 2008) (No. 07–10384)); *Gardner v. Holden*, 888 P.2d 608, 615 (Utah 1994) ("A claim of ineffective assistance of

¶ 25 Further, while my colleagues may view the trial court's division of assets as inequitable because we have no alternative but to reverse the trial court's ruling that the Properties are marital assets, this result is unfairly prejudicial to Husband, who is forced to relitigate virtually the entire case even though Wife had every opportunity to present her case.[7]

¶ 26 Neither party appealed the trial court's alimony award. However, had my colleagues not elected to give Wife a new trial on a new legal theory, I would have remanded the matter for reconsideration of the alimony award (to include Husband's collateral sources of support and the time and income production value of Husband's separate assets) since the real property award affected the level and duration of alimony the trial court awarded Wife.

## II. The Ranch and the Bulls

¶ 27 On cross-appeal, Wife contends that the trial court erred by ruling that "the bulls are [the sole] property of [the] Ranch" and that "the assets of [the] Ranch ..., including the land, equipment, livestock, and accounts receivable, as well as [Husband's] partner's capital account are his sole and separate property." Specifically, Wife argues that the first problem with the trial court's ruling is that the same reasoning that the court used to award a one half interest in Husband's interests in the Properties to Wife would equally justify awarding the Ranch to Wife as well.

¶ 28 The second problem, according to Wife, is that most of the bulls were registered to the Ranch and a few to Husband. She views this to be problematic even though Husband testified that he did so to save

counsel may not, therefore, be used simply to relitigate under a different guise an issue already disposed of on direct appeal." (internal quotation marks omitted)); *State v. Callahan*, 866 P.2d 590, 593 (Utah Ct.App.1993) ("[In making an analysis of ineffective assistance of counsel], this court will not second-guess trial counsel's legitimate strategic choices ...." (internal quotation marks omitted)); waiver, *see State v. Labrum*, 925 P.2d 937, 939 (Utah 1996) ("Opposing parties and courts are not required to constantly survey or second-guess the nonobjecting party's best interests or trial strategy."); judicial economy, *see DeBry v. Cascade Enters.*, 935 P.2d 499, 502 (Utah 1997) ("In the interests of judicial economy and stability of judgments, the strong policy of the law requires all contentions of error in trial court proceedings to be presented when an appeal is taken from a final judgment or order so that the trial court's judgments and rulings will not be upset after completion of appellate review."); the law of the case doctrine, *see Gildea v. Guardian Title Co. of Utah*, 2001 UT 75, ¶ 9, 31 P.3d 543 ("The effect of abandoning the [law of the case] doctrine ... would not be inconsequential, because considerable inefficiencies would result if parties were free to relitigate after remand issues decided in an earlier ruling of this court."); freedom of contract, *see Swenson v. Erickson*, 2000 UT 16, ¶ 19, 998 P.2d 807 ("[I]t is not for this court to second-guess the judgment of covenanting parties by including setback requirements for particular structures."); or public policy, *see Board of Educ. of Jordan Sch. Dist. v. Sandy City Corp.*, 2004 UT 37, ¶ 31, 94 P.3d 234 ("[W]e decline to substitute our judgment for that of the Sandy City Council in the resolution of [a] municipal problem."). *See also Jones v. Barlow*, 2007 UT 20, ¶ 39 n. 10, 154 P.3d 808 ("[A]bsent a statutory basis for doing so, it is improper for a court to second-guess the decision of the fit legal parents by conducting a 'best interests' analysis."); *Grimmett v. State*, 2007 UT 11, ¶ 27, 152 P.3d 306 ("[T]he *Johnson* nunc pro tunc resentencing remedy does not permit [the defendant] a second bite at the apple under Utah Code section 77–13–6(2)(b)." (citing *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981))); *State v. Lee*, 2006 UT 5, ¶ 19, 128 P.3d 1179 ("[W]hen the parties fail to object to the composition of the jury, a trial court has no obligation to second-guess that silence if the voir dire process over which it presided was fundamentally fair."). We have also shunned the notion that litigants should get a mulligan, even if the facts underlying a decision by a trial court change. *See In re C.L.*, 2007 UT 51, ¶ 25, 166 P.3d 608 ("If biological parents were able to relitigate the best interests issue every time a future fact or condition varied from a prediction at a hearing, no child could be truly secure in a future placement or adoption.").

7. "The basic rule as to division of property between spouses is that the court should make such order in relation to the property as may be equitable." *Bushell v. Bushell*, 649 P.2d 85, 87 (Utah 1982). Nonetheless, it is not only legally and procedurally inappropriate to address this issue, but inequitable to Husband to allow Wife to litigate anew. *See Stevenot v. Stevenot (In re Marriage of Stevenot)*, 154 Cal.App.3d 1051, 202 Cal.Rptr. 116, 123–24 (1984) ("[A] party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case.... The same principle also applies in the cases concerning equitable relief from judgments approving and adopting property settlement agreements ...." (internal quotation marks omitted)).

approximately $100 on a membership fee for the Angus Association.

¶ 29 Wife cites to no law to support her position or any evidence on the record that demonstrates that the trial court's rulings with regard to the bulls or Husband's interest in the Ranch are against the clear weight of the evidence that was before the trial court. In fact, at trial Husband testified that he purchased the bulls as an officer of the Ranch with the Ranch's money. The few bulls that were listed in Husband's name, he explained, were listed as such in order to save approximately $100 in membership fees to the Angus Association. "But," Husband added, "I've never owned a bull personally or purchased one with my own money." Similarly, Rous and her accountant testified that the Ranch was formed after Husband's father's death in order to reduce Rous's estate tax burden. More importantly, both testified that the acreage controlled by the Ranch was previously owned by Husband's parents—a fact that Wife does not dispute. Thus, we affirm the trial court's property division with respect to the Ranch and the bulls.

## CONCLUSION

¶ 30 In its findings, the trial court improperly relied on deposition testimony that was never entered into evidence. Therefore, we reverse the trial court's award to Wife of a one half interest in Husband's undivided interests in the Properties. We affirm the trial court's award of personal property regarding the Ranch and the bulls because Wife has failed to meet her burden to overturn the court's findings to those matters.

¶ 31 However, I disagree with my colleagues that Wife should receive a new trial regarding the division of the Properties under a new theory. Upon reversal of the trial court's award to Wife of one half of Husband's undivided interests in the Properties, I would remand for the purpose of revisiting the alimony award since the property distribution affected the level of alimony the trial court awarded Wife. I believe this is the proper approach.

BILLINGS, Judge (concurring in part II and dissenting in part I):

¶ 32 We agree with Judge Davis's opinion in Part I that the trial court erred in characterizing the Properties as joint property; however, our rationale is different. We conclude that the trial judge incorrectly characterized the Property as joint property and would do so even if the disputed evidence were properly admitted. However, instead of reversing the trial court's award, we remand for the trial court to consider division of the Properties under the rationale set forth in this opinion. Judge Davis's opinion refuses to give the trial court a chance to reconsider its division of the Properties because it claims the argument for an equitable distribution of the Properties was not made before the trial court. We conclude it was the trial court's mistaken characterization of the Properties as marital property that led the parties not to pursue the correct legal approach.

¶ 33 In her opening statement at trial, Wife's counsel clearly stated Wife's position that she was seeking an equitable interest in Husband's individually-owned property. Specifically, she stated that

> regard[ing] ... any real property that [Husband] owns, individually or jointly, [Wife requests] that she be awarded half interest in said property. With regards to the LLC ownership interest, she's requesting an award of half of the 20.37 percent interest that he now holds. And then with regard to other personal property we would ask that she be awarded an equitable interest in that as well.

However, Wife did not further pursue the correct legal approach of equitable distribution because the trial court incorrectly characterized the Properties as marital property. Before making any award of property, a trial court is "*first* required to properly categorize the parties' property as marital or separate." *Elman v. Elman*, 2002 UT App 83, ¶ 18, 45 P.3d 176 (emphasis added). It is only after this initial characterization that the trial court can continue in making its property distributions. *See Hodge v. Hodge*, 2007 UT App 394, ¶ 5, 174 P.3d 1137. "Trial courts must follow this 'systematic approach' when

making property division determinations." *Id.* (quoting *Kelley v. Kelley,* 2000 UT App 236, ¶ 24, 9 P.3d 171). After the trial court initially characterized the Properties as marital property, Wife had no need to pursue her theory of equitable distribution. Thus, under the general principle that we can affirm a trial court's decision on a different legal theory on appeal, *see Dipoma v. McPhie,* 2001 UT 61, ¶ 18, 29 P.3d 1225, Wife should be given an opportunity to pursue the legal theory of equitable distribution after the trial court properly characterizes the Properties as Husband's separate property. We therefore remand the trial court's division of the Properties to be considered under an equitable distribution theory. If the Properties cannot be distributed equitably, the trial court may then reconsider its alimony award as an equitable alternative.

¶ 34 In determining that Husband's interest in the Properties was not his separate property that Rous gifted to him during the marriage but rather was marital property, the trial court found that Husband's interest in the Properties was the result of his earnings from working on the Ranch. The trial court opined that "the only pension or retirement which most farmers and ranchers have is the value of the land which they have acquired." The court therefore found that "it makes sense that those who have stayed and worked the ranch receive a greater share. The greater share is not truly a gift, rather it is something that has been earned."

¶ 35 We disagree with the trial court's assessment that the Properties were marital rather than Husband's separate, gifted property. However, we conclude that this case is exactly the type of case where Utah's appellate courts have allowed the invasion of a spouse's separate property because it is the only way to achieve equity in the situation.

¶ 36 "Generally, in a divorce proceeding each party is presumed to be entitled to all of his or her separate property and

fifty percent of the marital property." *Bradford v. Bradford,* 1999 UT App 373, ¶ 26, 993 P.2d 887 (internal quotation marks omitted). "However, separate property is not 'totally beyond [a] court's reach in an equitable property division.'" *Elman,* 2002 UT App 83, ¶ 19, 45 P.3d 176 (alteration in original) (quoting *Burt v. Burt,* 799 P.2d 1166, 1169 (Utah Ct.App.1990)). Under Utah law, a trial court "may award the separate property of one spouse to the other spouse in extraordinary situations where equity so demands." *Id.* (internal quotation marks omitted).

¶ 37 In this case, Husband's limited income received from working on the Ranch may not allow him to provide a sufficient alimony payment to Wife to compensate her for twenty-three years of marriage where she managed the household and raised seven children. Wife's contribution to the household allowed Husband to focus his time and energy on preserving and increasing the value of both the Properties and the Ranch. *See, e.g., id.* ¶¶ 20, 24 n. 5 (noting that the wife was entitled to a portion of the husband's separate property interests because her work in maintaining and growing the marital property allowed the husband to concentrate fulltime on his separate property). Thus, we conclude that an equitable distribution of the Properties would be well within the trial court's discretion on remand. *See id.* ¶ 17 ("A trial court has considerable discretion concerning property [division] in a divorce proceeding." (alteration in original) (internal quotation marks omitted)).

¶ 38 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.