STATE of Utah, Plaintiff and Respondent,

v.

Gerald Edward BOYD, Defendant and Appellant.

No. 19472.

Supreme Court of Utah.

Nov. 13, 1984.

W. Andrew McCullough, Orem, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Dexter L. Anderson, Fillmore, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from his jury convictions of driving under the influence of alcohol, U.C.A., 1953, § 41–6–44, and of evading a police officer after receiving a signal to stop, U.C.A., 1953, § 41–6–13.5. He claims error in several regards. The three claims we treat on this appeal are: 1) the opinion testimony of one of the psychiatrists who examined him was improperly admitted because it was based on inadmissible facts, 2) the trial court erred in failing

to give a jury instruction on temporary insanity, and 3) the evidence was insufficient to convict him of driving under the influence of alcohol.

Defendant worked at the Intermountain Power Project in Delta, Utah, as a civil engineer for Los Angeles Water and Power. After several months, he decided to move his family from Los Angeles and make Delta his permanent home. However, his employer decided to transfer him back to Los Angeles. On August 23, 1982, one week before his scheduled return to Los Angeles, he attended a dinner party at the home of one of his friends. Defendant accompanied a friend who gave one of the party guests, Christine Montag, a ride to the party. They arrived shortly before dinner. Defendant consumed between four and six small glasses of wine over a period of about five or six hours that evening. All who were witnesses at the trial (who had been at the party) testified that defendant was not intoxicated when the party broke up and he walked next door to his own home between 11:15 and 11:30 p.m.

Mrs. Montag had been home only a few minutes when just before midnight she heard a truck stop near her house. She could see that someone was in the truck, but because she did not hear anyone exit, she became concerned and called the police. While she was on the phone, defendant knocked at her front door. They talked for a few minutes, defendant telling her that he was worried about her and her children. She told him that she was all right and to go home because she had called the police. He exclaimed, "Oh, gees," ran to the truck, and quickly drove away.

The police saw him drive away. They followed, and a chase ensued. Their cars reached speeds in excess of 90 miles per hour, until defendant left the road in his four-wheel drive truck and evaded them. Defendant testified that he remembered waving good-bye to his friends, seeing two lights sometime that night, hearing some noise, not having any idea what the lights and noise meant, and waking up draped over a barbed-wire fence at about 4:00 a.m.

Some I.P.P. security guards picked him up at about 7:00 a.m. and took him to the police office in town. The police there administered a breathalyzer test that indicated defendant had a .04 percent blood alcohol level.

## I. IMPROPERLY ADMITTED EVIDENCE

Defendant gave timely notice of a mental illness defense pursuant to U.C.A., 1953, § 77–14–3. Accordingly, pursuant to U.C.A., 1953, § 77–14–4, the trial court appointed two reputable psychiatrists to examine him. Defendant also secured the services of a local psychologist who was a nationally recognized expert in forensic psychology. All of the expert testimony, by stipulation of counsel, was read from transcripts of prior depositions. In the opinions of the psychologist and one of the court-appointed psychiatrists, defendant was suffering from a temporary mental illness known as a fugue reaction (a form of a dissociative mental state) when the events in question occurred. The second court-appointed psychiatrist, Dr. Lebegue, on the other hand, expressed the opinion that defendant was simply intoxicated and not suffering from any mental illness.

Defendant objected to the admission of a portion of Dr. Lebegue's opinion testimony on the ground that it was based on the breathalyzer test results, which were not admitted into evidence presumably because the test was not administered soon enough after the alleged crime. Although the admitted portions of Dr. Lebegue's testimony do not specifically mention the inadmissible breathalyzer test results, we must agree with defendant's objection. Dr. Lebegue's entire deposition testimony was so inextricably linked with the breathalyzer test results that it is impossible to say that he was not influenced by the inadmissible breathalyzer evidence in concluding that defendant was not suffering from a mental illness, but only from intoxication. Dr. Lebegue's testimony in that regard, therefore, was inadmissible. *American Honda Motor Co. v. Smith,* 110 Ariz. 593, 521 P.2d

1139 (1974); *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373 (1968); *Liber v. Flor*, 160 Colo. 7, 415 P.2d 332, 35 A.L.R.3d 1165 (1966).

 It is well-settled law that where the only expert testimony presented tends to show that a defendant could not form the requisite mental state for the offense charged, a jury is free to entirely disregard that expert testimony and convict the defendant based upon the inferences drawn only from circumstantial evidence. *People v. Drew*, 22 Cal.3d 333, 149 Cal.Rptr. 275, 583 P.2d 1318 (1978); *State v. Myers*, 94 Idaho 570, 494 P.2d 574 (1972). Had the only expert testimony been that defendant was suffering from a fugue reaction and could not form the necessary intent, the jury could have disregarded that testimony and convicted defendant nonetheless. However, that was not the case. We are uncertain that, absent Dr. Lebegue's testimony, the jury would have disbelieved the opinions favoring the defendant and would have convicted. Therefore, we hold that the trial court committed prejudicial error in admitting Dr. Lebegue's testimony. *State v. Mack*, 80 Wash.2d 19, 20, 490 P.2d 1303, 1304 (1971). Accordingly, the conviction for evasion of police officers is reversed and remanded for a new trial.

## II. TEMPORARY INSANITY JURY INSTRUCTION

██ Defendant also claims that the trial court erred by failing to give the jury a separate instruction on temporary mental illness. Because the issue will likely arise again at defendant's new trial, we will treat it in this appeal. The requested instruction read:

Temporary mental illness, or mental illness of a short duration, which existed at the time of the commission of the offense charged, is as fully recognized as a defense of mental illness of longer duration.

The trial court instead gave an instruction that closely paralleled the Model Penal Code's mental illness defense, which was adopted by Utah in U.C.A., 1953, § 76-2-305. The pertinent part of the instruction read:

Under the laws of this State the defendant may not be found guilty of either the felony or misdemeanor crime of failing to respond to an officer's signal to stop if, at the time of the incident in question, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfullness of his conduct or to conform his conduct to the requirements of law.

The words "at the time of the incident in question" adequately state that defendant's mental illness need exist only when the crime is committed. An instruction on mental illness based on the Model Penal Code adequately covers any temporary mental illness defense. *Stevens v. State*, 265 Ind. 396, 411, 354 N.E.2d 727 (1976). We find no error in the jury instruction as given.

## III. INSUFFICIENCY OF THE EVIDENCE ON DRUNK DRIVING CHARGE

Although the State presented evidence that defendant had been drinking at the dinner party, every witness from the party testified that he was not intoxicated when he left. There was no evidence at trial indicating that the four to six goblets of wine consumed by defendant over that length of time would make him intoxicated. Dr. Lebegue testified that defendant was driving while under the influence of alcohol, but we have held that testimony inadmissible. No police officer examined or even came close to defendant to determine whether he was intoxicated. Neither officer's testimony indicated that defendant had any difficulty in negotiating any curves or right-angle turns in the road.

██ By way of leading questions, counsel for both parties asked Officer Stoneking if defendant was "weaving" on the road. Although he answered affirmatively, his vague description of defendant's driving makes it unclear whether defendant

was truly driving in a weaving pattern. He stated that during the high-speed chase defendant "was kind of taking in the middle of the road all the say [sic], pretty well, except he's [sic] once in awhile get just a little too close to the shoulder and it would pull him over" and that defendant "got too close to the shoulder of the road and we about lost it." It was unclear whether the officer was referring to the right or left shoulder. Certainly driving in the middle of the road but occasionally getting close to the right shoulder is consistent with how a person would drive at high speeds. This testimony does not describe a weaving pattern where the driver goes from one side of the highway to the other or even from one lane to another. Officer Stoneking's testimony, standing alone, is insufficient to support a guilty verdict. Accordingly, we reverse the conviction of driving under the influence of alcohol.

We remand the case for a new trial on the charge of evading a police officer. No costs awarded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.