2011 UT App 377

Julie IACONO, individually; Julie Iacono, as trustee for the Carl R. and Ellen Gay Gordon Family trust; and Julie Iacono, as the executor/personal representative of the last will and testament of Carl R. Gordon, Plaintiffs and Appellant,

v.

Bret B. HICKEN, an individual; and Keith W. Weaver, an individual, Defendants and Appellee.

No. 20091040–CA.

Court of Appeals of Utah.

Nov. 3, 2011.

Jared L. Bramwell and Steven M. Kelly, Draper, for Appellant.

Peter Stirba and Julia D. Kyte, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and VOROS.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Julie Iacono appeals the district court's determination that Bret B. Hicken did not commit attorney malpractice, despite breaching the requisite duty of care while representing Iacono in another matter, because his breach was not the actual or proximate cause of the damages Iacono suffered. We affirm.

## BACKGROUND

¶ 2 Iacono's father (Father) and mother (Mother) created a family trust (the trust), naming themselves as the trustees and beneficiaries and leaving the residuary estate to their four children in equal shares. The original trust terms provided that the trust was revocable but became irrevocable upon the death of either Father or Mother.[1] Mother died on May 16, 1998, and several months later, Father appointed Iacono as his new co-trustee. Around September 2000, Father obtained the services of an attorney, Keith W. Weaver, to amend the trust so that Father's home in Ogden, Utah, would pass to Iacono alone, rather than passing to all of his four children through the residuary estate. This specific devise was apparently in recognition of Iacono's diligence in caring for Father, especially during the final years of his life, which were marked by illness. Shortly after Father's death in November 2001, Iacono's siblings (Siblings) challenged the validity of the trust amendment and brought several claims against Iacono as trustee.[2] Iacono retained the services of Hicken to represent her in this trust dispute against Siblings (the Trust Case).

¶ 3 The district court granted summary judgment in favor of Siblings, ruling that Siblings were entitled to a judgment as a matter of law regarding the validity of the trust amendment. In its memorandum decision, the district court concluded that

> Utah case law does not specify whether irrevocable means that the trust may not be amended or altered. . . . In addition, the drafter of the trust, [an attorney], believed the Family Trust could not be amended or changed. The Court is persuaded that the provision in the Family Trust making the Family Trust irrevocable upon the death of either of the Grantors means that the Family Trust could not be modified or amended. Accordingly, the Court con-

---

1. Specifically, the trust instrument stated, "This Trust shall be revocable, and may be altered, amended or modified, by the Grantors, by delivering to the Trustee a written document setting forth the changes or revocation. However, this Trust shall become irrevocable upon the death of either of the Grantors."

2. Siblings alleged that Iacono wasted trust assets, and they brought causes of action based in accounting, fraudulent transfer of real property, and breach of fiduciary duties.

cludes that the Trust Amendment is invalid and unenforceable.

Iacono settled the remaining trustee claims out of court "to minimize damages," and as a result, "Iacono received nothing from her parents' estate."[3]

¶4 Iacono then brought a legal malpractice action (the Malpractice Case) against Hicken, arguing that Hicken's representation of Iacono in the Trust Case was negligent.[4] Iacono asserted claims of professional negligence, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. Specifically, Iacono argued that Hicken failed to assert any defenses against summary judgment, failed to conduct discovery of his own, and failed to timely respond and object to Siblings' discovery requests.

¶5 Iacono presented testimony from two witnesses at the Malpractice Case bench trial. First, an attorney practicing primarily in trusts and estates since 1977 testified as an expert, stating that the trust "had notable ambiguities, which caused confusion in determining whether the Trust was totally irrevocable or whether it could be amended." (Internal quotation marks omitted.) He additionally testified that Hicken's representation fell below the requisite standard of care and gave examples of arguments and Utah cases that Hicken could and should have used in defending against summary judgment. The expert identified three cases as especially helpful: *West v. West (In re Estate of West)*, 948 P.2d 351 (Utah 1997); *Kline ex rel. Kline v. Utah Department of Health*, 776 P.2d 57 (Utah Ct.App.1989); and *Clayton v. Behle*, 565 P.2d 1132 (Utah 1977). Because the law in Utah at the time of the Trust Case was unclear as to the validity of the trust amendment—a factor all parties in the Malpractice Case agreed on—the expert believed Hicken's failure to address these three cases was a crucial error that deprived Iacono of "a good shot at prevailing." As to *West*, the expert opined that had the district court in the Trust Case read *West* alone, Iacono might have defeated summary judgment. The expert also testified that although the attorney who drafted the original trust believed the trust could not be amended, that same attorney actually assisted Father in amending the trustee succession provision of the trust and, therefore, little weight ought to be given to the original drafter's opinions. Siblings' Trust Case attorney was Iacono's second witness and testified in the capacity of a lay witness, not as an expert. He testified that he "felt sorry for [Iacono] and felt that she was not receiving enough help from Hicken." The help Hicken did provide, he testified, was substandard because Hicken's filings contained many spelling and formatting errors, his Answer failed to include any affirmative defenses, and he failed to object to any of the "ton[s]" of discovery requests filed.[5]

¶6 The district court ruled that Hicken did breach the duty of care owed to Iacono but that the breach did not cause Iacono's damages. In reaching this decision, the court reviewed and analyzed the three cases relied on by Iacono's expert witness and stated that "it is impossible to predict what [the Trust Case judge] or any other objective trial court or even the Utah Supreme Court would or should have ruled in the [Trust] case, in light of the holdings in *Clayton, Kline,* and *West*."

---

**3.** The record is unclear as to whether Iacono at least received a vehicle upon Father's death. There appears to have been some debate as to whether the vehicle was actually part of Father's estate at all. Nonetheless, Iacono did not receive any proceeds from the sale of Father's Ogden home.

**4.** Iacono also brought malpractice claims against Weaver, who is both a licensed attorney and a social worker, for his role in drafting the trust amendment, and respondeat superior claims against Vista Hospice Care, the medical facility where Weaver was employed as a social worker. The claims against Vista Hospice Care were settled and dismissed prior to the Malpractice Case bench trial, and the claims against Weaver were settled and dismissed prior to appeal.

**5.** The district court noted that it "was appalled to learn from [Siblings' Trust Case attorney] that he and his firm had racked up attorney's fees of $60,000.00 for an estate that he valued at $200,000 to $300,000 in value-with the home included." With that in mind, the district court noted in its assessment of Hicken's representation that it did not fault Hicken "for failing to respond in kind" when Siblings' Trust Case attorney's " 'full-court press' was, indeed, intended to make [Iacono] cower and give up."

Therefore, the district court concluded, "[C]ontrary to [the expert's] opinion, [the court] does not believe that [Iacono] 'could' have prevailed or even had a 'good shot' at prevailing." The district court further explained that an expert witness's testimony is based on opinion, not fact, and that Iacono's expert's testimony was "totally unhelpful."

¶ 7 The district court's ruling considered only Iacono's negligence cause of action because it determined that the other causes of action were not "actively pursued and argued by the plaintiff and defended and argued by the defendants at trial." The district court also noted that punitive damages are not a cause of action in Utah, despite Iacono's framing of the matter as such, and that Iacono did not argue for punitive damages during closing arguments despite several direct questions from the court during closing arguments about damages.

¶ 8 Following the court's ruling, Iacono submitted a Motion to Amend Judgment or, in the Alternative Motion For a New Trial (Iacono's Motion for a New Trial), which the district court denied. Iacono now appeals, arguing that (1) the district court erred in determining that Iacono waived all but her negligence claim; (2) the district court's consideration of nonrecord evidence—the three cases referenced by the expert witness—constituted reversible error; (3) the district court erred in discounting the expert witness's testimony; (4) the district court's determination that there was no causal link between Hicken's breach and Iacono's damages was an abuse of discretion and its findings were clearly erroneous because the court based its ruling on insufficient record evidence and an erroneous view of the law; and (5) the district court erred in determining that the trust was not amendable as a matter of law.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Iacono's arguments on appeal present questions of fact and law. The district court's determination that Iacono waived certain claims, its ruling that the trust was not amendable as a matter of law, and its consideration of the three cases referenced by the expert witness are legal questions, which we review for correctness. *See generally State v. Pena*, 869 P.2d 932, 935 (Utah 1994) ("Legal determinations ... are defined as those which are not of fact but are essentially of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances.").

¶ 10 The district court's determinations that the expert witness's testimony was "unhelpful" and that causation was not established in light of the unsettled law regarding the Trust Case issues are factual determinations that "shall not be set aside unless clearly erroneous," Utah R. Civ. P. 52(a). *See Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) (explaining that the determination of causation in a legal malpractice action is generally a question of fact but recognizing scenarios in which the determination becomes a question of law). "The trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Cummings v. Cummings*, 821 P.2d 472, 476 (Utah Ct.App.1991) (internal quotation marks omitted). When challenging the district court's findings, Iacono must "marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence." *See Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177 (internal quotation marks omitted).[6]

## ANALYSIS [7]

### I. Waiver of All But Iacono's Negligence Claim

¶ 11 Iacono argues that the district court erred in dismissing her request for punitive damages and dismissing her claims of legal malpractice alleging breach of fiduciary duty,

---

6. As a preliminary matter, we believe Iacono satisfied the marshaling burden. *See generally Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177.

7. Parts I and II in the lead opinion represent the majority opinion. However, various aspects of sections III, IV, and V do not. *See infra* ¶¶ 46, 53.

breach of contract, and breach of the implied covenant of good faith and fair dealing. Specifically, Iacono argues that these claims were dismissed solely because they were not raised in her closing arguments.

¶ 12 Generally, in a bench trial, closing arguments are not necessary. *See, e.g., Fuentes v. Fuentes,* 209 Ariz. 51, 97 P.3d 876, 883 (App.2004) ("[T]rial judges are presumed to know the law and to apply it in making their decisions, and the need for a summary argument at the close of evidence is not always helpful to the trial court acting as the trier of both fact and law." (citation and internal quotation marks omitted)); *Regal Cinemas, Inc. v. City of Mayfield Heights,* 137 Ohio App.3d 61, 738 N.E.2d 42, 45 (2000) (noting that parties filed closing briefs in lieu of closing arguments at the end of the bench trial); *Tolle v. Fenley,* 2006 UT App 78, ¶ 68, 132 P.3d 63 ("The court did not hear closing arguments at the [bench] trial, instead allowing the parties to submit proposed findings and conclusions stating their interpretation of the proper results."). Logically following, as Iacono states, is the principle that "it is unfair and inappropriate for a court to dismiss claims, causes of action, or elements of claims solely based upon the fact that closing arguments did not address such."

¶ 13 While we agree with Iacono on that point of law, the only claim that could be construed as dismissed due to Iacono's failure to address it in closing arguments is her request for punitive damages. With respect to that argument, the district court pointed out that a request for punitive damages "is not really a cause of action ... [and] was not argued by [Iacono] during closing arguments." *Cf. Behrens v. Raleigh Hills Hosp., Inc.,* 675 P.2d 1179, 1182 (Utah 1983) ("[A]n amendment to include damages does not import into a case a new and different cause of action."). Further, Iacono failed to bring up punitive damages after direct questioning by the district court on damages. In other words, after being given the floor to discuss the damages sought, Iacono did not address punitive damages. Moreover, Iacono ultimately waived her claim to punitive damages during the subsequent hearing on her Motion

for a New Trial by not raising the issue. We therefore decline to further address whether Iacono's punitive damages request was properly dismissed and move on to determine whether her other causes of action were properly dismissed.

¶ 14 As to Iacono's other causes of action, we do not believe that the district court dismissed these claims because of Iacono's failure to address them in her closing arguments. Rather, in its ruling on Iacono's Motion for a New Trial, the district court explained that Iacono "failed to present any facts at trial to persuade the court that [Hicken]" breached his fiduciary duties, breached his contract with Iacono, or breached the implied covenant of good faith and fair dealing.

¶ 15 To allow the district court to consider Iacono's other substantive malpractice claims, Iacono had to present evidence of the elements of those claims. The elements of a legal malpractice cause of action based on breach of fiduciary duty are "(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1290 (Utah Ct.App.1996). An attorney's fiduciary duty to a client requires him or her " 'to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation [of the client].' " *Id.* (alteration in original) (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 11.1, at 631 (3d ed. 1989)). "Fiduciary duties include acting with utmost fairness to clients, making full disclosure, avoiding representation which conflicts with that of the client, and preserving confidences of the client." Ray Ryden Anderson & Walter W. Steele Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle,* 47 SMU L.Rev. 235, 241 (1994) (footnotes omitted).

¶ 16 The district court explained that Iacono "failed to present any facts at trial to persuade the court that [Hicken] failed to have undivided loyalty and failed to be confi-

dential with [his] dealings with Ms. Iacono." Indeed, during the hearing on her Motion for a New Trial, Iacono essentially agreed with the district court's statement that an attorney's fiduciary duty is "not just some sort of amorphous duty out there to be a good attorney for your client" but requires evidence of different elements than what are required for a malpractice claim based in negligence. Iacono conceded that her case for a breach of fiduciary duty was "not as strong" and that was why her "focus [at trial] was on the [negligence] malpractice cause of action." Accordingly, we do not believe the district court erred in dismissing this cause of action upon its finding that Iacono failed to prove that Hicken breached his fiduciary duty.

¶ 17 Iacono also argued that Hicken's inadequate representation amounted to a breach of contract. A legal malpractice " 'action for breach of a promise is governed by rules of contract rather than rules of legal malpractice,' " *Bennett v. Jones, Waldo, Holbrook & McDonough,* 2003 UT 9, ¶ 32, 70 P.3d 17 (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 8.5, at 590 (4th ed. 1996)), and "deals directly with the attorney's breach of a specified term in a contract between the attorney and the client, within the scope of the attorney-client relationship, that causes the client to suffer damages," *Christensen & Jensen, PC v. Barrett & Daines,* 2008 UT 64, ¶ 24, 194 P.3d 931. To succeed, Iacono must demonstrate "(1) [the existence of] a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the express promise by the defendant; and (4) damages to the plaintiff resulting from the breach." *Bennett,* 2003 UT 9, ¶ 32, 70 P.3d 17 (alteration in original) (internal quotation marks omitted). The district court found that Iacono failed to present evidence of an express promise made by Hicken that was then breached and that Iacono's testimony that Hicken promised her, "[W]e're going to win," and then his subsequent loss in the Trust Case did not satisfy this element. Although Iacono testified differently than Hicken about what guarantees and representations were made, the district court "found that [Iacono] was not consistent in her testimony and ... [so the court] didn't rely on her testimony." As the arbiter of

witness credibility in a bench trial, we defer to the district court's determinations of the weight to be placed on each witness's testimony, *see Lamkin v. Lynch,* 600 P.2d 530, 531 (Utah 1979), and determine that the district court did not err by dismissing Iacono's breach of contract claim for lack of evidence.

¶ 18 Flowing from Iacono's breach of contract claim is her final cause of action that alleged that Hicken breached their attorney-client contract's implied covenant of good faith and fair dealing. *See generally Eggett v. Wasatch Energy Corp.,* 2004 UT 28, ¶ 14, 94 P.3d 193 ("An implied covenant of good faith and fair dealing inheres in every contract."). "Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Id.* During the hearing on Iacono's Motion for a New Trial, the district court clarified that the evidence presented at trial did not demonstrate that Hicken did "anything intentionally to deprive Ms. Iacono of any of the rights that she would have under her contract." At the same hearing, Iacono did not direct the court to evidence on point and instead seemed to have conceded that if she failed on the breach of contract claim, then the implied covenant of good faith and fair dealing claim must fail too. Therefore, we agree with the district court's conclusion that Iacono's claim based on the implied covenant of good faith and fair dealing was properly dismissed because the evidence did not support the elements of the cause of action.

¶ 19 In sum, the district court did not err in dismissing Iacono's claims for breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing after finding that Iacono did not provide evidence to support these claims. Iacono's argument that these causes of action were dismissed because they were not addressed in her closing argument is simply not supported by the record.

## II. Consideration of the *West, Kline,* and *Clayton* Cases

¶ 20 Iacono argues that the district court "committed reversible error by

considering and relying upon non-record evidence in issuing its decision." Specifically, Iacono asserts that the district court was not permitted to independently review *West v. West (In re Estate of West)*, 948 P.2d 351 (Utah 1997); *Kline ex rel. Kline v. Utah Department of Health*, 776 P.2d 57 (Utah Ct.App.1989); and *Clayton v. Behle*, 565 P.2d 1132 (Utah 1977), because those cases were not admitted into evidence, although they were discussed by the expert during his testimony and relied on in the expert's report, which was admitted into evidence. "In deciding a case tried without the aid of a jury, the court has great leeway in deciding what are the facts as presented by the evidence before him. However, neither a judge nor a jury is permitted to go outside the evidence to make a finding." *Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850, 852 (1972).

¶ 21 Here, the district court informed the parties at the close of the trial that it would review the cases presented by the expert, and neither party objected at that time. In justifying its review of these three cases, the district court explained, "[A]s the legal decision maker in this matter, [the court] had to do its own analysis of the cases that [the expert] relied upon in making his decision...."

¶ 22 Iacono compares the district court's actions to those of the court in *Kunzler v. Kunzler*, 2008 UT App 263, 190 P.3d 497. The district court in *Kunzler* determined that certain assets were marital property in light of deposition testimony that was used to refresh a witness's recollection but was not admitted into the trial record as substantive evidence. *See id.* ¶ 18. On appeal, this court determined that the district court improperly based its findings on the deposition transcript because the transcript was outside of the trial record. *See id.*

¶ 23 Here, the review of the *West*, *Kline*, and *Clayton* cases does not fall within the same category of outside materials as in *Kunzler*. Indeed, the cases represent relevant law that the expert witness relied on extensively and that the court expressly informed the parties it was going to review. It is not typical trial practice for parties to

submit into evidence printed copies of the law on which they rely, and generally, when printed copies are provided to the court, it is as a courtesy to save the court the time in having to find the cases itself—a search it likely would conduct on its own otherwise. To adopt Iacono's argument—that all law relied on by experts or parties to a proceeding must be formally admitted into evidence—would set an absurd precedent. A trial court is always free to consider precedential legal authority relied upon by the parties in evaluating the merits of a legal claim. To suggest that a court should instead have to rely on an expert's assessment of that authority is, frankly, inappropriate.

### III. Expert Testimony

¶ 24 Iacono next seeks a determination from this court "definitively stat[ing] that expert testimony is required to establish causation" in all legal malpractice cases. Iacono argues that such a determination would render Hicken's failure to offer rebuttal expert testimony fatal to his case.

¶ 25 Iacono argues that such a determination could flow from *Fox v. Brigham Young University*, 2007 UT App 406, 176 P.3d 446, which she interprets as requiring expert testimony to prove causation in other professional malpractice cases. *See id.* ¶ 22. However, *Fox* itself has nothing to do with professional malpractice—it is a slip and fall case in which the trial court required expert medical testimony to discern the cause of the plaintiff's injuries in light of her preexisting knee condition. *See id.* ¶ 1. Additionally, the proposition Iacono gleans from *Fox*, when read in context, is actually the court's determination that expert witness testimony was required in that case to elucidate the "obscure medical factors" complicating the causation analysis. *See id.* ¶¶ 22–26 (internal quotation marks omitted). Preceding this determination, the court explicitly stated that, in general, "[t]he need for positive expert testimony to establish a causal link between the defendants' negligent act and the plaintiff's injury depends on the nature of the injury," thus clarifying that expert testimony is not necessarily required to establish causation when bringing a negligence cause of

action. *See id.* ¶ 22 (alteration in original) (internal quotation marks omitted).

¶ 26 Additionally, Iacono argues that other jurisdictions require expert testimony to prove causation in legal malpractice cases. However, the cases Iacono cites stand only for the principle that expert testimony *may* be required to prove causation. *See, e.g., Hoover v. Larkin,* 196 S.W.3d 227, 231 (Tex. App.2006) ("In general, one proves causation in a legal malpractice suit by expert testimony." (citing *Alexander v. Turtur & Assoc., Inc.,* 146 S.W.3d 113, 119–20 (Tex.2004) (recognizing that in legal malpractice actions, causation can in some cases be proven by "the client's testimony . . . but in others the connection may be beyond the jury's common understanding and require expert testimony"))). Such testimony, however, is generally not required in more obvious cases. *See, e.g., Palmer v. Sena,* 474 F.Supp.2d 347, 350–52 (D.Conn.2007) (explaining that Connecticut legal malpractice law requires expert testimony to establish causation, except in "obvious" cases); *Samuel v. Hepworth, Nungester & Lezamiz, Inc.,* 134 Idaho 84, 996 P.2d 303, 308 (2000) (same); *Carbone v. Tierney,* 151 N.H. 521, 864 A.2d 308, 315 (2004) ("[U]nless the causal link is obvious or can be established by other evidence, expert testimony may be essential to prove what the lawyer should have done." (alteration in original) (internal quotation marks omitted)).

¶ 27 In professional malpractice cases in general, "Utah courts have held that expert testimony may be helpful, and in some cases necessary, in establishing the standard of care required in cases dealing with the duties owed by a particular profession."[8] *Preston & Chambers, PC v. Koller,* 943 P.2d 260, 263 (Utah Ct.App.1997) (requiring expert testimony to establish the duty of care in an attorney malpractice case involving water rights, eminent domain, and negligence; describing the malpractice claims as not ob-

vious; and requiring "a certain level of expertise beyond even the knowledge of the average licensed, practicing attorney" (internal quotation marks omitted)). To prove causation in tort law in general, Utah courts require expert testimony in all but the "most obvious cases." *See Fox,* 2007 UT App 406, ¶ 22, 176 P.3d 446. The law is clear on this matter, and accordingly, Iacono's request to impose a requirement for expert testimony to establish causation in all legal malpractice actions is declined.

¶ 28 If we did decide to amend the law as such, Iacono argues that the district court, as fact finder in this case, would not have had the discretion to reject her expert's testimony. Even if expert testimony were required in this case, however, the burden of establishing causation was on Iacono, and the district court was not precluded from determining that her expert's testimony failed to establish causation even in the absence of expert testimony refuting causation. Consequently, the district court did not err in rejecting the legal conclusions of Iacono's expert witness. In general, "[t]he matter of witness credibility . . . falls within the province of the fact-finder." *Lamkin v. Lynch,* 600 P.2d 530, 531 (Utah 1979); *see also* Utah R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury . . . the court shall find the facts . . . ."); *Yelderman v. Yelderman,* 669 P.2d 406, 408 (Utah 1983) (per curiam) ("The weight and credibility of [a] witness, including expert testimony, . . . are matters to be determined by the trier of fact."). "The fact that there [are] no opposing experts does not justify an inference that the experts' testimony was reliable." *State v. Rimmasch,* 775 P.2d 388, 393 n. 3 (Utah 1989); *see also Duplan v. Harper,* 188 F.3d 1195, 1202–03 (10th Cir.1999) ("[W]hen the district court acts as fact finder it is not obliged to accept uncontradicted expert testimony."); *cf. State v. Boyd,* 692 P.2d 769, 771 (Utah 1984) ("It is well-settled law that

---

**8.** Iacono contends that "[e]xpert testimony is *generally* required in Utah to establish the standard of care in an attorney malpractice case," (emphasis added), and cites *Preston & Chambers, PC v. Koller,* 943 P.2d 260 (Utah Ct.App.1997), for support. *Preston,* however, stands for the propositions that expert testimony *may* be required to establish the standard of care in an attorney malpractice case, not that it is *generally* required, and that the requirement is necessarily case-specific. *See id.* at 263–64 ("In some cases, expert testimony may be unnecessary where the propriety of the defendant's conduct is within the common knowledge and experience of the layman." (internal quotation marks omitted)).

where the only expert testimony presented tends to show that a defendant could not form the requisite mental state for the offense charged, a jury is free to entirely disregard that expert testimony and convict the defendant based upon the inferences drawn only from circumstantial evidence.").

¶ 29 Here, the district court found the expert's testimony to be unconvincing. Specifically, the district court was concerned that the expert was not an experienced litigator and that this inexperience necessarily rendered his testimony less credible as to what arguments and cases Hicken ought to have discussed. Additionally, the district court interpreted the expert's testimony regarding various key issues as too vague to be helpful. For instance, "[o]n cross examination by Hicken, [the expert] admitted that there was no way to know whether the Court would have decided differently had [the expert]'s arguments [regarding the *West, Kline,* and *Clayton* cases] been presented." As the trier of fact in this case, the district court's decision to discount the expert's testimony is consistent with the "evidence and reasonable inferences." *See Child v. Gonda,* 972 P.2d 425, 433 (Utah 1998). Accordingly, "we will not disturb [those findings]," *id.*

### IV. The District Court's Causation Determination

¶ 30 Iacono argues that the district court's determination that there was no causal link between Hicken's breach and Iacono's damages was an abuse of discretion and clearly erroneous because the district court based its findings on insufficient record evidence and an erroneous view of the law. We disagree.

¶ 31 Causation is "the connection between fault and damages in legal malpractice actions [and] cannot properly be based on speculation or conjecture." *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1291 (Utah Ct.App.1996) (internal quotation marks omitted). To demonstrate causation in a legal malpractice case, "the client is required to show that absent the conduct complained of—whether it is a breach of an express promise or fiduciary duty by the attorney or non-adherence to proper professional conduct—the client would have benefitted."

*Christensen & Jensen, PC v. Barrett & Daines,* 2008 UT 64, ¶ 26, 194 P.3d 931; *see also Kilpatrick,* 909 P.2d at 1291 (explaining that legal malpractice actions require evidence of "actual cause—that but for the attorney's wrong [the client's] loss would not have occurred—and proximate cause—that a reasonable likelihood exists that they would have ultimately benefited"). In other words, Iacono must show that if Hicken "had adhered to the ordinary standards of professional competence and had done the act he failed to do or not done the act complained about," the resolution of the Trust Case would have been more favorable for Iacono. *See Harline v. Barker,* 854 P.2d 595, 600 (Utah Ct.App.1993). Each of Iacono's causation challenges are addressed in turn.

### A. Sufficiency of the Causation Evidence

¶ 32 First, Iacono reiterates two of the arguments addressed above—those regarding her expert's testimony and the court's decision in the Malpractice Case to independently read *West, Kline,* and *Clayton,* which were relied on by the expert. As previously discussed, the district court did not err by considering the case law relied on by the expert or by finding the expert's testimony unpersuasive. The district court interpreted the cases relied on by the expert differently than the expert in several ways and made its causation determination after carefully weighing the expert's testimony—which it concluded was unhelpful—and after analyzing the *West, Kline,* and *Clayton* cases. In its review of these cases, the district court determined that *Clayton* probably would have been construed against Iacono, *see generally Clayton v. Behle,* 565 P.2d 1132, 1133–34 (Utah 1977) (finding an inter vivos trust irrevocable due to the trust's lack of a provision permitting revocation, and evidence of the settlor's understanding and affirmative intent that it be irrevocable); that *Kline* was largely inapplicable, *see generally Kline ex rel. Kline v. Utah Dep't of Health,* 776 P.2d 57, 62–63 (Utah Ct.App.1989) (determining that the trustor's creation of a durable power of attorney did not alter the trust's language or affect the trustor's intent to ensure that the trust became irrevocable and unamenda-

ble upon the trustor's death or loss of capacity); and that *West,* upon which the expert primarily relied, was sufficiently distinct in its facts to provide little support to Iacono, *see generally West v. West (In re Estate of West),* 948 P.2d 351, 354, 356 (Utah 1997). Specifically, the *West* court was not willing to interpret a single disputed trust provision to restrict a sole surviving trustee's ability to "sell or dispose of the property" where "nothing in the trust instrument denies to a sole trustee any of the powers possessed by the joint trustees." *Id.* at 354. In Iacono's case, however, the trust terms provide that the trust "shall become irrevocable upon the death of either of the Grantors." In other words, *West*'s decision was in part based on the *absence of language* akin to that contained in Iacono's trust. *See id.* at 354, 356. Ultimately the court viewed "[t]he cases presented by the … expert [as] … only show[ing] that there was no clearly defined law in 2000 with regard to [the trust amendment issue]."

¶ 33 Additionally, the district court was not convinced by the expert's often equivocal statements regarding causation and considered the expert's lack of litigation experience as a factor weighing against his testimony as to what Hicken should have done to successfully litigate the Trust Case. Based on this analysis, the district court stated that "it is impossible to predict what the [court in the Trust Case] or any other objective trial court or even the Utah Supreme Court would or should have ruled in the [Trust C]ase." The district court then ruled that Iacono "failed to establish that there was a causal connection between the breach of duty owed by Hicken to [Iacono] and her loss of the home or its value in the [Trust C]ase." As previously determined, the district court did not err by reviewing the three cases at issue, and its credibility determination with regard to the expert also was not clearly erroneous. Therefore, its reliance on its own interpretations of the cases and its discounting of the expert's testimony supported its ruling that Iacono had not demonstrated a causal connection between Hicken's breach and her loss.

¶ 34 Iacono further argues that irrespective of the trust language, the Trust Case court would have ruled that Father retained the power to revoke or amend the trust had Hicken brought the *Clayton* case to its attention. Specifically, Iacono focuses on *Clayton* for the proposition that "where the settlor is the sole beneficiary, by the weight of authority he can terminate the trust at any time and compel the trustee to reconvey the property to him." 565 P.2d at 1133.

¶ 35 In *Clayton,* the settlor created an irrevocable trust, and after being granted a divorce a few months thereafter, he treated the trust assets as though they belonged to him. *See id.* at 1132–33. Four years later, the settlor "attempted to transfer those assets to various other trusts." *Id.* at 1133. The issue came down to whether the first trust was irrevocable. *See id.* The record indicated that the settlor intended that the original trust be irrevocable and was informed it was irrevocable by the attorney who drafted the trust. *See id.* The *Clayton* court speculated that in situations in which the settlor of an inter vivos trust does not carve out the right to revoke the trust, the trust may nonetheless terminate "where its continuance is not necessary to carry out a material purpose of the trust where all the beneficiaries thereof consent" and that "where the settlor is the sole beneficiary, … he can terminate the trust at any time and compel the trustee to reconvey the property to him." *Id.* Notwithstanding that observation, the *Clayton* court affirmed the trial court's determination that the original trust was irrevocable on the grounds that "the settlor was not mistaken about the law of trusts and did not inadvertently fail to include a power of revocation in the trust instrument." *Id.* at 1134. In other words, the proposition now relied upon by Iacono— that "where the settlor is the sole beneficiary … he can terminate the trust at any time and compel the trustee to reconvey the property to him," *id.*—was not determinative in *Clayton;* it was dictum. *See generally Jones v. Barlow,* 2007 UT 20, ¶ 28, 154 P.3d 808 (explaining that dicta is not binding on a court). In the thirty-four years since *Clayton* was decided, only seven cases have cited

it and none for that proposition.[9] Therefore, not only are the facts distinct in Iacono's case, but the proposition relied on from *Clayton* remains dictum. Accordingly, as discussed previously, *see supra* ¶ 23, the Malpractice Case court correctly determined that Iacono could not prove causation because the case law at the time of the Trust Case was sufficiently ambiguous.

### B. The District Court's Application of the Legal Standard

¶ 36 Iacono contends the district court erred when applying a "more likely than not" standard to determine causation rather than a "reasonable likelihood" standard. Additionally, Iacono argues that the district court improperly applied a subjective rather than an objective standard of review by analyzing what the Trust Case court itself would have done had it been presented with the evidence suggested by Iacono's two witnesses.

### 1. Reasonable Likelihood Versus More Likely than Not

¶ 37 Iacono argues that the proper standard to determine causation in a legal malpractice action is whether a "reasonable likelihood exists that [the plaintiff] would have ultimately benefited," *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1291 (Utah Ct.App.1996) (explaining proximate cause specifically). However, Iacono argues that the district court applied a "more likely than not" standard and refers to a portion of the Findings of Fact, Memorandum Decision,

Conclusions of Law, and Order (Order) in which the district court states that Iacono "could not—'more likely than not'—have prevailed on the summary judgment motion." Additionally, the district court stated that, "it is impossible to predict what" would have happened had Hicken pursued the case differently.[10] These statements, Iacono argues, indicate that the district court "appeared to believe that, in order to meet her burden, Iacono needed to establish that her victory in the underlying case was 'certain' or 'guaranteed,' rather than merely establishing the required probability of success."

¶ 38 Assuming without deciding that the district court applied the wrong standard here, Iacono's argument that the result would have been any different for her is unavailing. Most notably, the Trust Case court, in ruling on Siblings' motion for summary judgment, was aware that there was no Utah case law that clearly answered the amendability question and acknowledged that other states have held that trusts similar to the one in this case are not amendable. Thus, even under an arguably less onerous "reasonable likelihood" standard, it is not clear that the outcome would have changed had *West*, *Kline*, and *Clayton* been presented in the manner the expert espoused in light of the district court's determinations that these cases were only marginally helpful and that the expert's testimony was unpersuasive. In other words, had Hicken done everything the expert in trusts law would have done, it is still not reasonably likely that Iacono "would have ultimately benefited," *see id.* At best,

**9.** Primarily, *Clayton v. Behle*, 565 P.2d 1132 (Utah 1977), has been cited in subsequent cases as support for two principles. First, that "[i]f a settlor does not specifically reserve the power to revoke the trust in the terms of the trust agreement, then the trust may be revoked only if all the beneficiaries consent to the revocation," *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 30, 144 P.3d 1129; *see also Dorcy v. First Trust Co. of St. Paul (In re Trust of Schroll)*, 297 N.W.2d 282, 284 (Minn.1980); *Sundquist v. Sundquist*, 639 P.2d 181, 187–88 (Utah 1981). Second, that "a settlor has the power to modify or revoke a trust only if and to the extent that such power is explicitly reserved by the terms of the trust," *Banks v. Means*, 2002 UT 65, ¶ 9, 52 P.3d 1190, *overruled on other grounds by Hoggan v. Hoggan*, 2007 UT 78, ¶ 11 n. 2, 169 P.3d 750; *accord Nicosia v. Turzyn*, 97 Nev. 93, 624 P.2d 499, 500 (1981) (per curiam); *Kline ex rel. Kline*

*v. Utah Dep't of Health*, 776 P.2d 57, 61 (Utah Ct.App.1989).

**10.** Iacono quotes several other statements to support this notion. However, some of these statements were made by Hicken and the expert and are therefore not illustrative of the district court's alleged error. For instance, Iacono alleges that the district court asked the expert, in regard to the import of *West*, whether he "[felt] more likely than not, ... but no way to know with certainty [that *West* would have been followed]." However, this line of questioning was conducted by Hicken on cross-examination of the expert. It was not a question interjected by the court that could then be construed as demonstrative of the court's misunderstanding of the standard of review.

the district court may have concluded that Iacono had a reasonable likelihood of surviving summary judgment; however, even if the district court reached that conclusion, it would simply mean that Siblings could not have won without a trial, not that they would not have won at all, or that the outcome would have been better for Iacono. *Cf. West v. West,* 15 Utah 2d 87, 387 P.2d 686, 689 (1963) ("[T]he mere fact that a party may move for a summary judgment, believing he is entitled to it, does not ipso facto concede that if he is not, the other party is. When a party thinks that his case is so clear that he should have a summary judgment without trial and so moves, the denial of that motion settles that issue and nothing else. That [issue being], that he is not entitled to the summary judgment."); *LeVanger v. Highland Estates Props. Owners Ass'n,* 2003 UT App 377, ¶ 13, 80 P.3d 569 ("The denial of a motion for summary judgment on an issue is not a final decision on the merits of that issue." (citing *Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (describing a denial of summary judgment as "strictly a pretrial order that decides only one thing—that the case should go to trial"))). The Trust Case presented a debatable issue with little on-point case law, and the case law identified by the expert was not very elucidating. Because the "reasonable likelihood" standard is not satisfied by simply determining that Iacono had a "reasonable likelihood" of defeating summary judgment, rather than of succeeding in the Trust Case as a whole, any error the district court may have made in applying the "more likely than not" standard rather than the "reasonable likelihood" standard was harmless. *See generally Jones v. Cyprus Plateau Mining Corp.,* 944 P.2d 357, 360 (Utah 1997) ("Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings."); *Gallegos ex rel. Rynes v. Dick Simon Trucking, Inc.,* 2004 UT App 322, ¶ 19, 110 P.3d 710 (defining "reasonable likelihood" as "substantively identical to a reasonable probability," which is "'a probability sufficient to undermine confidence in the outcome'" that is more than a "mere possibility" but less than "more probable than not" (additional internal quotation marks omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))).

### 2. Objective Versus Subjective Standard

¶ 39 A legal malpractice action necessarily presents a "case within a case," and requires the reviewing court "'to establish what the result [of the underlying litigation] *should have* been (an objective standard), not what a particular judge or jury *would have* decided (a subjective standard).'" *Glencore, Ltd. v. Ince,* 972 P.2d 376, 380 (Utah 1998) (alteration in original) (quoting *Harline v. Barker,* 912 P.2d 433, 440 (Utah 1996) (adopting the rule discussed in 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.7, at 641–42 (3d ed. 1989))). Iacono argues that the district court inappropriately employed the subjective standard of review in ruling on the Malpractice Case.

¶ 40 In support of her argument, Iacono points to the district court's Order, which stated, "This was an expert witness that provided with no assurance that [the Trust Case court], in the underlying case, would have decided differently on the summary judgment motion, and that's what this was all about...." Iacono also directs our attention to statements made by the district court during the Malpractice Case bench trial that indicate that the court misunderstood its role in thinking it must "take [the expert's] research and make a decision as to what [it] think[s the Trust Case court] would have done had [it] had this information."

¶ 41 However, to put these quotations in context, the expert responded to the latter statement during the proceedings and clarified that the applicable standard of review involves an analysis of "[w]hat [the Trust Case court] or, on appeal, what the Court of Appeals or the Supreme Court would have ultimately ruled.... Basically, would a proper job have made a difference in this case?" In its Order, the district court then borrowed the expert's language almost word-for-word in rendering its causation conclusion, agreeing with Iacono that the causation determination is governed by an objective standard, and citing *Glencore Ltd. v. Ince,* 972 P.2d

376, 380 (Utah 1998)-the same standard and case quoted above, *see supra* ¶ 39. Although Iacono points out statements made by the Malpractice Case court that may indicate that the court was confused as to what the standard involved during the bench trial, the analysis and statements of law in the Order nonetheless demonstrate that the proper objective standard of review was applied, and applied correctly, to the causation ruling. *Cf. Skypark Airport Ass'n v. Jensen,* 2011 UT App 230, ¶ 6 n. 4, 686 Utah Adv. Rep. 58, *petition for cert. filed* Aug. 18, 2011 ("Given that the trial court specifically employed the correct standard in its written order, we are unconvinced that this single isolated statement made at the hearing indicates that the trial court employed an erroneous legal standard.").

### V. Amendability of the Trust

¶ 42 Lastly, Iacono argues that the district court "erred in its determination that, as a matter of law, the trust was not amendable." In support of this contention, Iacono refers to the section of the Order in which causation is analyzed. Iacono appears to argue that because the Malpractice Case court, after analyzing the *West, Kline,* and *Clayton* cases, determined that causation was not proven, it necessarily also determined that the trust was not amendable.

¶ 43 This interpretation of the Order, however, misreads the district court's findings. The district court simply disagreed with the expert by finding *West, Kline,* and *Clayton* less helpful than the expert opined. In justifying that conclusion, the district court explained that the expert's lack of litigation experience detracted from his testimony as to how Iacono's Trust Case could have been more effectively litigated. Thus, the conclusion the district court reached was not that the trust was or was not amendable, but that the case law and arguments at the crux of Iacono's Malpractice Case did not do enough to clarify the Trust Case ambiguity for the Malpractice Case court to then conclude that Hicken's poor representation caused Iacono's

loss in the Trust Case. Accordingly, there is no support in the record for Iacono's argument that the district court improperly determined that the trust was not amendable.[11]

### CONCLUSION

¶ 44 The district court properly dismissed Iacono's breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing legal malpractice claims after finding that Iacono did not provide evidence to support those claims. The *West, Kline,* and *Clayton* cases did not need to be formally admitted into evidence to permit the district court to review those cases. Therefore, the district court's decision to evaluate those cases was correct. Additionally, neither the district court's credibility determination of the expert's testimony nor its causation determination on Iacono's legal malpractice negligence claim are clearly erroneous. Any error the district court may have made in applying a "more likely than not" standard to determine causation rather than a "reasonable likelihood" standard was harmless and the district court correctly applied an objective rather than subjective standard to determine the same. Lastly, the district court did not err in ruling that the amendability of the trust remained unclear even in light of the evidence and arguments presented during the Malpractice Case.

¶ 45 Accordingly, we affirm.

VOROS, Judge (concurring in part and concurring in the result in part):

¶ 46 I concur in parts I and II of the lead opinion, but I concur only in result as to parts III, IV, and V of that opinion. Because Judge Orme concurs in part A of this opinion, it—not the lead opinion—expresses the rationale of the court as to the matters it addresses.

### A.

¶ 47 On appeal, Iacono contends that but for Hicken's negligence, it was reason-

---

11. We do not make any determination as to the amendability of the trust. We have merely determined that the Malpractice Case court did not err in ruling that the law regarding the amendability issues in the Trust Case was far from clear at the time of the Trust Case.

ably likely that Iacono would have prevailed *on summary judgment* in the Trust Case. Therefore, this court should limit its analysis to whether she has demonstrated that she would, under a correct view of the law, have prevailed *on summary judgment*. We need not consider, as the lead opinion does at paragraph 38, whether Iacono ultimately would have succeeded "in the Trust case as a whole" had summary judgment been denied.

¶ 48 Second, because the only question of causation properly before us is whether, but for Hicken's negligence, Iacono would have prevailed on summary judgment, causation here presents a question of law. "[P]roximate cause issues can be decided as a matter of law when a determination of the facts falls on either of two opposite ends of a factual continuum." *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996). Moreover, a malpractice plaintiff is not entitled to have a jury decide a legal question that only the judge could have decided in the underlying decision. *See id.* at 440. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Thus, whether certain legal theories would have entitled Iacono to summary judgment in the Trust Case is a question of law. *See* 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 36:15, at 1393 (2011 ed.) ("[I]f causation depends on a legal ruling, the issue usually presents a question of law.").

¶ 49 In this respect, determining legal malpractice in the context of a summary judgment motion is akin to determining legal malpractice in the context of an appeal. And "the vast majority of courts that have addressed this issue have concluded that the issue of proximate cause in an appellate legal malpractice action presents a question of law for the court and not a question of fact for a jury." *Governmental Interinsurance Exch. v. Judge*, 221 Ill.2d 195, 302 Ill.Dec. 746, 850 N.E.2d 183, 194 (2006) (collecting cases). By analogy, in a legal malpractice action claiming that, but for the lawyer's negligence, the client would have prevailed on summary judgment in the underlying action, the issue of causation is a question of law for the court.

¶ 50 Third, because causation is a question of law, expert testimony is superfluous. Deciding questions of law is the role of the judge, not a witness, even—as in this case—a highly qualified legal specialist. To determine what the law requires when applied to an uncontested set of facts, the parties need only brief and argue the matter to the court. Accordingly, we reject out of hand Iacono's contention that the district court erred in declining to adopt the opinions of her expert witness or in examining for itself the judicial opinions on which that expert relied. *Cf. Watkiss & Saperstein v. Williams*, 931 P.2d 840, 841, 844–45 (Utah 1996) (affirming a legal malpractice decision without commenting on the appropriateness of the trial court's viewing expert testimony "in an advisory capacity" and reviewing the statutory and case law that formed the basis of the experts' testimony).

## B.

¶ 51 Finally, the lead opinion affirms the court's finding that causation cannot be established because the state of the law was uncertain. It also declines to determine whether the trust was amendable. I do not believe the question of causation can be resolved without determining "what a reasonable judge should have done in the underlying case," *see Harline*, 912 P.2d at 440; that is, whether a reasonable judge should have granted Iacono's properly researched and framed summary judgment motion. Presented with uncontested facts and a claim that Iacono was entitled to judgment as a matter of law, the Trust Case court could not have denied Iacono's motion on the ground that the law was unclear. It would have had to decide the question of law. *See id.* at 440 (explaining that, as a legal malpractice case is a " 'trial-within-a-trial,' " " '[t]he objective is to establish what the result [of the underlying litigation] *should have* been ....' " (second alteration in original) (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.7, at 641–42 (3d ed. 1989))). Consequently, I do not believe the Malpractice Case court, or this court, can determine the issue of causation without deciding whether the Trust was amendable under

*West v. West (In re Estate of West)*, 948 P.2d 351 (Utah 1997), *Clayton v. Behle*, 565 P.2d 1132 (Utah 1977), and *Kline ex rel. Kline v. Utah Department of Health*, 776 P.2d 57 (Utah Ct.App.1989). Nevertheless, like the lead opinion, I would not decide whether as a matter of law the Trust was amendable. In fact, I would not decide the issue of causation. I would instead affirm on the alternative ground that Hicken did not breach the standard of care.

¶ 52 If the plaintiff in a legal malpractice case "successfully shows that his attorney erred under applicable law, it is well recognized that the attorney may still avoid liability by showing that his error was the result of an uncertain, unsettled, or debatable state of the applicable law." *Watkiss & Saperstein*, 931 P.2d at 846. *See generally* 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* §§ 19:1, 19:4, 19:6, 19:8–10, 19:17 (ed. 2011). Moreover, "[m]ost courts hold that the issues of whether the lawyer erred and whether the error was caused by vagaries in the law raise questions of law to be decided by the court." *Watkiss & Saperstein*, 931 P.2d at 846. Although more receptive than my colleagues to the view that *West, Clayton,* and *Kline* allowed Father to amend the Trust, I do regard the question as "debatable." *See id.* I would thus affirm the judgment of the district court on the alternative ground that, under *Watkiss & Saperstein v. Williams*, 931 P.2d 840 (Utah 1996), Hicken did not breach the standard of care by failing to construct and advance a legal argument based on these three cases. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 (holding that an appellate court may affirm on any legal ground apparent on the record).[1]

ORME, Judge (concurring in part and concurring in the result in part):

¶ 53 I concur in part A of the concurring opinion authored by Judge Voros. I concur in parts I and II of the lead opinion authored by Judge Davis and in the balance of the lead opinion to the extent it is not inconsistent with part A of Judge Voros's opinion.

---

1. Our supreme court has stated that "[t]o qualify for immunity from liability for the consequences of an erroneous legal interpretation of unsettled and uncertain law, most courts demand that lawyers perform the research and investigation necessary to make an informed judgment." *Watkiss & Saperstein v. Williams*, 931 P.2d 840, 851 (Utah 1996). And here, the district court found that Hicken's research fell below the standard of care. Nevertheless, I cannot see how Hicken could be liable for failing to find uncertain case law if, having found it, he would not be liable for failing to argue it. "If the law truly is debatable or unsettled, research will not necessarily lead an attorney to a correct conclusion." 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 19:6, at 1239 (ed. 2011).